Argued July 2, affirmed September 15, 1925.

## A. C. EVERSON v. N. W. PHELPS.

(239 Pac. 102.)

**Brokers—Abandonment by Prospective Purchaser of Determination to Purchase Relieves Owner of Liability for Commission.**

1. Where a prospective purchaser produced by broker abandoned his determination to purchase, a subsequent sale to him by owner after expiration of broker's contract of sale did not create liability for commission.

**Brokers—Whether Broker was Procuring Cause Question for Jury.**

2. In action for commission for sale of property, question whether plaintiff was procuring cause of sale was for jury.

**Appeal and Error—Brokers—Evidence Held Sufficient to Support Verdict for Defendant in Action for Commissions.**

3. In broker's action for commissions for sale of real estate, evidence *held* sufficient to support verdict that broker had failed to produce a purchaser ready, able and willing to buy according to the contract, and hence such verdict was conclusive on appeal, in view of Constitution, Article VII, Section 3c.

See (1) 9 C. J. 602, 608, 621.  (2) 9 C. J. 659.  (3) 4 C. J. 855; 9 C. J. 655.

From Tillamook: GEORGE BAGLEY, Judge.

Department 2.

The plaintiff is a licensed real estate agent and dealer, with offices in the City of Tillamook, Tillamook County, Oregon. He prosecutes this action at law for

1. When broker entitled to commisssion, see notes in 28 **Am. St. Rep.** 546; 139 **Am. St. Rep.** 225. See, also, 4 **R. C. L.** 321.

money asserted to have been earned by him in procuring a purchaser for certain real and personal property possessed by the defendant, in accordance with the terms of the following agency contract:

"AGREEMENT.

"Tillamook, Ore., 6/2, 1920.

"I hereby appoint A. C. Everson my agent 30 days to sell or contract in my name to sell the real estate owned by me, viz.: 88 acres in Sec. 33, T. 1 S., R. 9 W., including 37 cows, 2 1-year H. Heifers, 2 bulls, 4 pigs, C. W. team, H. wagon, all implements, chickens 1 dozen. Price, $45,000. Terms, $2,000. Balance 60 per cent., and if a sale is made or a purchaser found, or I send a buyer who takes property at said price and terms or any other price or terms that I may hereafter authorize or accept, I agree to pay said agent a cash commission of $1,000, and if through said agent a trade or exchange for other property is consummated, said trade or exchange to be authorized or accepted by me, I agree to pay said agent the above commission in cash on the price which above property, or any part thereof, is traded or exchanged.

"I agree to convey to purchaser title in fee simple by warranty deed and furnish abstract of title. Subject to original contract. Agency to be revoked only by giving —— days' notice in writing.

"Invoice of place found on back.

"N. W. PHELPS, Owner.

"I accept agency on above terms.

"A. C. EVERSON, Agent."

At the conclusion of the testimony upon the trial, the plaintiff moved the court for a directed verdict, which motion was denied. The jury returned a verdict for the defendant. The plaintiff, appealing, asserts that the court erred in refusing to direct the jury to return a verdict for the plaintiff as requested in plaintiff's motion.                              AFFIRMED.

For appellant there was a brief over the names of *Mr. Mark W. Hearn* and *Messrs. Johnson & Handley,* with an oral argument by *Mr. S. S. Johnson.*

For respondent there was a brief and oral arguments by *Mr. H. T. Botts* and *Mr. George P. Winslow.*

BROWN, J.—This is a second appeal. The result of the former appeal is reported in 104 Or. 288 (206 Pac. 306 (26 A. L. R. 780).

The single point relied upon by plaintiff in his appeal is the failure of the court to instruct the jury to return a verdict for plaintiff. He grounds his motion upon the contention that the evidence introduced on the trial established the right of the plaintiff to recover as demanded in the complaint, and on the further contention that ''the evidence that has been introduced even by the defendant in this case has established the fact that there was a continuation of the contract relation between Reding and Phelps during the entire period from the 3d of July until the sixth day of July, when the transaction and sale was actually consummated,'' and, finally, that ''the Supreme Court, * * in the appeal of this cause, * * has already adjudicated that substantially the same facts proven by all the evidence of this trial entitles the plaintiff to recover as demanded in the complaint.''

The case of *Everson* v. *Phelps,* 104 Or. 288 (206 Pac. 306, 26 A. L. R. 780), referred to in plaintiff's motion, which was an appeal from a judgment of nonsuit granted by the Circuit Court upon defendant's motion made at the conclusion of plaintiff's evidence, presented a situation entirely different from that which now confronts this court. In that case, Mr.

Justice McCourt, in rendering the opinion for the court, said:

"The plaintiff made out a case for submission to the jury, and the circuit court committed error in granting a judgment of nonsuit. The recitals of fact that appear in this opinion are based upon plaintiff's evidence in the absence of any showing by defendant and are not intended as expressions of opinion upon the facts of the case as they may be developed when the evidence of the defendant is presented."

It was further held that, notwithstanding the term of plaintiff's agency had expired before the sale was actually consummated, this fact would not deprive him of his right to compensation if, within the period of thirty days provided by the contract, the plaintiff procured a person ready, able and willing to purchase upon the specified terms, to whom a sale was effected without interruption of the negotiations. We quote the following language of the court based upon plaintiff's record of the case alone:

"In this case there is no abandonment by the purchaser of his determination to purchase the property between the conclusion of negotiations between plaintiff and the purchaser and the time that the contract of sale was concluded. The relations of the parties * * continued uninterruptedly after the expiration of the plaintiff's agency to the completion of the sale."

1. Now that the defendant has made a showing and offered his testimony, the record reveals some evidence of abandonment of a determination to purchase upon the part of the purchaser.

There is no issue as to the validity and meaning of the contract constituting the basis of this action. The expression, "Terms $2,000; balance 60 per cent," as used in the agreement, was understood by the contract-

ing parties as meaning, locally, that $2,000 should be
paid in cash, and that the remainder of the considera-
tion should be paid from 60 per cent of the cash de-
rived by the purchaser of the property from milk
produced by the dairy cows on the place. See Or.
L., § 718, and the authority there noted. The plaintiff
claims that he produced a purchaser who was ready,
willing and able to purchase the defendant's property
in accordance with the stipulations expressed in the
contract. Plaintiff further asserts that his "Prospect"
actually purchased the property listed with him for
sale in accordance with the terms of the agency con-
tract. This the defendant denies. Hence an issue
arises.

The agency contract, the duration of which was
thirty days, expired at midnight on July 2, 1920.
During the last day of the life of the contract, the
plaintiff, through one W. G. Harris, procured a pros-
pective purchaser in Karl Reding and took him to
visit the property listed for sale. Reding, after look-
ing the property over, decided to purchase it upon
the terms represented by plaintiff, and paid to plain-
tiff $500, by check, making the following notation
thereon: "This check is given as part payment on
the Phelps place, or better known as Fred Maurer
place. Price $45,000." Plaintiff executed a receipt for
the $500, reciting that it was "as first payment on the
Phelps place." On the same day, Phelps, the defend-
ant, was notified that the plaintiff had found a pur-
chaser. The following day, the parties to this action,
together with the prospective purchaser, met in the
plaintiff's office in Tillamook to discuss the terms of
sale and complete the transaction. Karl Reding, the
alleged purchaser, who was a Swiss, desiring the as-

sistance of an advisor with whom he could converse in
his own language, invited one Joseph Durrer to be
present.   During the negotiations it was claimed by the
prospective purchaser that he had misunderstood the
terms of the contract of sale and his obligations aris-
ing thereunder.   According to the testimony of Mrs.
Phelps, wife of defendant, Reding asserted that he had
not understood from the agent that there was a fed-
eral loan on the place amounting to about $8,000;
also, that he had understood from plaintiff's repre-
sentations that he (Reding) would be entitled to re-
tain 40 per cent of the proceeds from the sale of the
milk, to apply as he chose; that 60 per cent of the
receipts for milk sold should apply upon the whole
of the purchase price remaining unpaid; and that all
the hogs and calves were to go with the place.   She
testified that Durrer and Reding conversed in a foreign
tongue, and that Reding finally "turned the deal down
and said it was off, and would not do anything with
it."   Mrs. Phelps was asked these questions:

"Q. Now, what finally resulted from this confer-
ence?

"A. Well, all there was to it was for us to go home
and milk the cows again.   He said he would not
take it.

"Q. Who said he would not take it?

"A. Why, Karl Reding told us in the office; he said
there in our presence he would have nothing to do
with it, and he said it a time or two on the street
when we happened to see him there, so I just drove
home and went to work again."

She testified that there was no understanding to take
the matter up again, and that the sale of the property
was abandoned.

The defendant's interest in the property was ac-
quired from one Fred Maurer under a contract of

sale, and he was selling the property subject to that contract. Therefore, an understanding of the terms of the Maurer contract with the defendant and his wife becomes important. The Maurer contract, of date March 20, 1919, provided that the dairy farm, stock and equipment involved herein were to be purchased by the defendant and his wife for the consideration of $39,000. Fifteen hundred dollars of the purchase price was paid on delivery of the contract. As a part of the purchase price, the defendant and his wife assumed and agreed to pay a federal loan on the property in the amount of $8,820, and the balance of $28,680 was to be paid from 60 per cent of the receipts from the milk produced by the cows on the farm. It was further agreed that the 60 per cent received from the milk sales was first to be applied to the payment of interest each year, the balance, if any, to be applied on the principal sum, and, in case 60 per cent of such milk receipts was insufficient to pay the interest, then, in that case, Phelps agreed to pay the balance of the interest from other sources. It was specially provided that the interest on the government loan was not to be paid from the 60 per cent to be delivered to Maurer.

Now, reverting to the negotiations between the parties hereto: It appears that when the plaintiff and the defendant met with the purchaser to close the sales contract involved in this litigation, the purchaser claimed that he had misunderstood the terms of purchase. He testified, in effect, that, according to his understanding, he was to pay $2,000 down and apply 60 per cent of the receipts for milk upon the various sums remaining unpaid; that, when he was informed that he could not retain the 40 per cent of the milk

115 Or.—34

receipts and use or apply the same as he chose, but that it would be necessary for him to pay interest on the federal loan from that sum, and that 60 per cent of the milk receipts was to be applied only upon the amount due Maurer, he declared that it was impossible for him to carry out the contract and refused to negotiate further. He testified that he had also understood that he was to acquire with the farm all of the stock on the place, whereas the vendor had reserved hogs and young cattle of the value of something like $1,000. The testimony of Phelps, the defendant, is likewise to the effect that Reding, the purchaser, was not ready and willing to meet the terms of sale, but that he refused, and that he left the room and demanded the return of the $500 paid as earnest-money.

It will be remembered that plaintiff's agency contract expired on July 2, 1920. Three days later, Durrer called Phelps by telephone, and, pursuant thereto, Phelps, Karl Reding and Durrer met and negotiated concerning the sale of the property. At Durrer's suggestion, Phelps made new terms, whereby he reduced the purchase price in the sum of $500, cut the rate of interest 1 per cent on the amount coming to himself, and added to the property conveyed $1,000 worth of personal property consisting of hogs and Holstein heifers. For Durrer's assistance in making the sale, Phelps agreed to pay him $500. Upon these terms, the sale was made to Karl Reding.

The matter of compensation due upon real estate brokers' contracts is a common subject of litigation, as shown by the reports of our own and the decisions of other jurisdictions: See Real Estate Agency, Walker (2 ed.). The decisions disclose that the courts have guarded against any effort of principals to avoid the

payment of legitimate compensation to the broker. That the principal must act in good faith toward his broker is a recognized rule of law. A vendor may not, by chicanery or any contrivance, elude or escape liability to his broker where a sale is made in accordance with the specifications contained in the agency contract. An unbroken line of expression is thus stated:

"Where realty broker is the instrument through which sale has been effected, no artifice, deceit, or fraud will deprive him of his commission." Real Estate Agency, Walker (2 ed.), p. 410.

But, in the case at bar, the jury evidently believed the testimony adduced by defendant, and found that the plaintiff failed to prove by a preponderance of the evidence that he had produced a purchaser ready, able and willing to buy according to the stipulations contained in the contract. The burden of proof was upon the plaintiff. Not only is there some testimony to the effect that plaintiff failed to perform the stipulations of his contract, but there is likewise testimony that the defendant neither waived his right thereunder nor prevented the broker from fully complying therewith. The testimony of each party shows that the defendant was extremely anxious that the sale be effected. This we may well believe.

"Where there is no fraud or bad faith on the part of the employer and the broker does not perform within the time limit, the employer after the expiration thereof may contract with a customer introduced by the broker within the period for performance, either upon the same terms or upon others more or less favorable than those the broker was authorized to offer, without incurring any liability to compensate the latter for his services." 4 R. C. L., Broker, § 47.

To similar effect is 9 C. J., p. 602, and authorities under note 62. See, also, note, 21 L. R. A. (N. S.) 328.

2. While it appears that the plaintiff rendered to the defendant a valuable service, that alone does not entitle him to the judgment demanded: *Donovan* v. *Weed,* 182 N. Y. 43 (74 N. E. 563). Whether the plaintiff was the procuring cause of the sale of defendant's property was a question of fact to be decided by the trial jury in view of all the facts and surrounding circumstances: 2 Mechem on Agency (2 ed.), § 2435.

"In actions at law, * * no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." Or. Const., Art. VII, § 30c.

3. From the record before us, we cannot affirmatively say that there is no evidence to support the verdict of the jury. The trial court did not err in denying plaintiff's motion for a directed verdict. This case is affirmed. AFFIRMED.

McBRIDE, C. J., and BEAN and BELT, JJ., concur.