SNYDER, *Appellant,*
*v.*
SCHRAM et al, *Respondents.*
547 P2d 102

*Robert P. Dickinson,* Fairview, argued the cause and filed a brief for appellant.

*Cleveland C. Cory,* Portland, argued the cause for respondents. With him on the brief were Clarence R. Wicks, and Davies, Biggs, Strayer, Stoel and Boley, Portland.

Before O'Connell, Chief Justice, and Denecke, Holman, Tongue, Howell and Bryson, Justices.

HOWELL, J.

**HOWELL, J.**

Plaintiff filed this action to recover a real estate commission. The action was tried before the court without a jury and a judgment entered for defendants. Plaintiff appeals.

The facts and the sequence of events are important.

On May 18, 1972, the plaintiff, a real estate brokerage firm, entered into a brokerage contract with defendants for the sale of defendants' property in Gresham for $148,500. The contract provided for an expiration time of midnight, October 1, 1972. However, it also provided that the commission would be payable if the property were sold within 90 days after the termination date to a buyer whom the plaintiff had placed in contact with the seller during the "employment."[1]

Immediately after the contract was executed, the plaintiff began extensive negotiations attempting to sell the property to the United States Postal Service. These negotiations continued beyond the expiration date of the agreement, October 1, 1972, and for more than 90 days thereafter.

The record discloses that from January, 1973, to the first of May, 1973, the plaintiff continued contacting the Postal Service authorities in Seattle and San Francisco concerning the status of the purchase, the availability of funds, the appraisal value of the property, and other matters relating to the purchase. It is also clear from the record that from May, 1972 to May, 1973, the plaintiff spent a large amount of brokerage time working on the sale of defendants' property to the Postal

---

[1]The contract provided, in part:

"* * * In the event that you, or any other brokers cooperating with you, shall find a buyer ready and willing to enter into a deal for said price and terms, or such other terms and price as I may accept, or that during your employment you place me in contact with a buyer to or through whom at any time within 90 days after the termination of said employment I may sell or convey said property, I hereby agree to pay you in cash for your services a commission equal in amount to 8 % of said selling price."

Ninety days after October 1, 1972 would be December 30, 1972.

Service and that, while the negotiations with the government were at times frustrating, the sale was becoming more of a reality as time progressed.

However, on May 2, 1973, defendants advised plaintiff that the listing agreement was terminated and that plaintiff would not be entitled to any commission on the sale. The plaintiff objected to the termination, and the record shows that plaintiff conducted some activity thereafter, although without the acquiescence and perhaps without the knowledge of defendants.

On May 25, 1973, defendants executed an irrevocable option to the Postmaster General giving him the right to purchase the property for $150,000. On August 21, 1973, the Postmaster General exercised the option, and on September 14, 1973, the defendants conveyed the property to the Postal Service.

At trial, plaintiff contended that the brokerage contract with the defendants was impliedly extended beyond the contract termination date and remained in force at the time the sale was finally consummated in September, 1973.

The law is well established that the time of performance of a broker's contract may be waived or impliedly extended when the principal, after the expiration date, encourages the broker to continue his efforts, and the broker does so with the knowledge and approval of the principal. Each case must be decided on its own facts. Among the factors to be considered are whether the principal accepts the services of the broker and recognizes the contract as still in force, and whether negotiations with the prospective purchaser continued or were interrupted before the contract was consummated. *See Ferris v. Meeker Fertilizer Co.,* 258 Or 377, 482 P2d 523 (1971), and cases cited therein.

Although the trial court specifically found that defendants encouraged plaintiff to continue his efforts beyond the original termination date, the court,

nevertheless, concluded that plaintiff had not brought himself within the rule of *Ferris v. Meeker Fertilizer Co.,* supra. We disagree with this conclusion.

It is apparent from both the trial court's findings and from the record in this case that plaintiff did bring himself within the rule of *Ferris* and that his brokerage contract was impliedly extended beyond the original termination date. The trial court found that defendants encouraged plaintiff to continue his negotiating efforts, and the evidence discloses that plaintiff kept the defendants informed as to his progress. The evidence also indicates that the negotiations were continued by the plaintiff, and later by the defendants, without any significant interruptions, and that the sale was eventually consummated on substantially the same terms as it was negotiated. Under these circumstances, we hold that defendants, by their conduct, waived the original termination date and impliedly agreed to an extension of the listing agreement.

However, it does not necessarily follow from this conclusion that plaintiff is entitled to his commission. Although the agreement was impliedly extended beyond the original termination date, it appears from the evidence that on May 2, 1973, defendants' attorney notified plaintiff that the brokerage agreement no longer had "any validity" and that plaintiff would not be entitled to any commission upon the eventual sale of the property.[2] On the basis of this evidence defendants contend that, even if the contract had been

[2]The text of the letter was as follows:

"This is to confirm our telephone conversation of this date concerning the Gresham property owned, until recently, by James E. Schram and Robert Wolfard and their respective wives. As I told you over the telephone, this property was transferred by James E. Schram and Robert Wolfard to the First National Bank of Oregon as a result of foreclosure proceedings instituted by the bank with the Schrams and Wolfards obtaining an option to buy the property back for a limited period of time.

"In view of the foregoing, you should understand that any prior arrangements you or Snyder Bros. Realty, or any other realty company, might have had with the Schrams and Wolfards to sell the property for

impliedly extended by their conduct, any extension was terminated as of May 2, 1973. They also argue that since the eventual sale of the property did not take place within 90 days thereafter, plaintiff would still not be entitled to his commission.

██ ██ Although the defendants did have the right to terminate the listing agreement on October 1, 1972, or at any time thereafter, such a termination would be effective only if made in good faith. The general rule is that a vendor must act in good faith in terminating a contract with a broker and that he cannot terminate the contract solely to avoid liability for the broker's commission while he continues to negotiate with a prospective purchaser procured by the broker. *See e.g., Rose v. Hunter,* 155 Cal App 2d 319, 317 P2d 1027 (1957); *Western Pride Builders, Inc. v. Zicha,* 23 Ill App 3d 770, 320 NE2d 181 (1974); *Leimbach v. Nicholson,* 219 Md 440, 149 A2d 411 (1959); *Steele v. Seth,* 211 Md 323, 127 A2d 388 (1956); *Stromberg v. Seaton Ranch Co.,* 160 Mont 293, 502 P2d 41 (1972). *See also* 12 Am Jur 962-63, Brokers § 222 (1964); Annot., 51 ALR3d 1208, § 16 (1973); Annot., 27 ALR2d 1395, § 7 (1953); Annot., 88 ALR 716 (1934).

██ This rule is stated in 2 Restatement Agency (2d), § 454, as follows:

"Revocation in Bad Faith of Offer of Compensation

"An agent to whom the principal has made a revocable offer of compensation if he accomplishes a specified result is entitled to the promised amount if the principal, in order to avoid payment of it, revokes the offer and thereafter the result is accomplished as the result of the agent's prior efforts."

The term "bad faith," as used in the Restatement,

them no longer are of any validity. Also, I understand the time period set forth in the written sales agreement under which you were acting has long since expired.

"Therefore, you should understand there can be no sales commission for you or any realty company on any sale or transfer of that property."

imports a termination of the listing agreement for the purpose of escaping payment of the broker's commission. *See Id.,* Comment *(b). See also Leimbach v. Nicholson,* supra.

The view expressed in the Restatement is in accordance with the law in this jurisdiction as well. *See Warner v. Ellison et al,* 129 Or 197, 276 P 1108 (1929); *Everson v. Phelps,* 115 Or 523, 239 P 102 (1925).

■ Under the pleadings in this case, defendants had the burden of proving a valid termination of the listing agreement once plaintiff had established that the original contract had been impliedly extended beyond the original termination date under the rule of *Ferris.* Since the trial court found that *Ferris* was inapplicable, the court apparently did not reach the issue of whether defendants had established a good faith termination of the extended agreement.

■ In this connection, the record discloses evidence that at some time after the contract's 90-day provision expired on December 30, 1972, and before May 2, 1973, defendants believed "we might be close to getting a deal from the Post Office." The evidence also indicates that plaintiff continued his calls to the Postal Service in Seattle and San Francisco, and periodically reported to defendants on his progress. However, in April, 1973, it began to become increasingly difficult to reach the defendants. When plaintiff wrote to the defendants expressing his concern, his letters went unanswered and eventually were turned over to defendants' attorney. There was also evidence that the irrevocable option to purchase by the Postal Service was executed approximately three weeks after defendants terminated their contract with plaintiff. Such evidence would be material to the question of whether defendants terminated the extended listing agreement "in order to avoid payment [of plaintiff's commission] and thereafter the [sale was] accomplished as a result of the agent's prior efforts." 2 Restatement Agency (2d), § 454. Moreover, although the *stated* reason for the ter-

mination letter was defendants' transfer of the property in question to the bank as a result of foreclosure proceedings, that letter also discloses that defendants retained an option to repurchase the property from the bank. Thus, defendants retained control over the property while continuing the negotiations with the Postal Service which eventually resulted in the government's purchase of the property from the defendants.

As this court noted in *Everson v. Phelps,* supra:

"* * * The decisions disclose that the courts have guarded against any effort of principals to avoid the payment of legitimate compensation to the broker. That the principal must act in good faith toward his broker is a recognized rule of law. A vendor may not, by chicanery or any contrivance, elude or escape liability to his broker where a sale is made in accordance with the specifications contained in the agency contract. An unbroken line of expression is thus stated:

" 'Where realty broker is the instrument through which sale has been effected, no artifice, deceit, or fraud will deprive him of his commission.' Real Estate Agency, Walker (2 ed), p. 410." 115 Or at 530-31.

However, since this is a factual issue which was not reached by the trial court due to its conclusion as to the applicability of *Ferris v. Meeker Fertilizer Co.,* supra, we must remand this case for further findings. Moreover, we do not mean to express any opinion as to whether defendants in this case actually terminated the agreement in bad faith. On remand, the trial court may allow both parties to offer any additional evidence on this issue.

Reversed and remanded.