## Frederick F. Day v. Hibbard Porter et al.

1. BROKERS—*When Entitled to Commissions.*—The principal can not, when the broker's efforts have resulted in negotiations for a sale and the expected customer still has the matter under consideration, step in, and, taking up the unbroken thread by which the broker and customer are connected, weave it into a completed fabric and escape liability for the work of the broker thus turned to his profit.

2. SAME—*Sales—No Time Fixed, etc.*—Where no time within which a broker is to sell real estate is fixed, he is entitled to a reasonable time in which to make the sale.

Assumpsit, for services as real estate broker. Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed October 3, 1895.

Day v. Porter.

### Statement of the Case.

This is an action brought by appellees against appellant to recover for services alleged to have been performed for appellant as real estate brokers in negotiating for appellant a sale of real estate situated in the city of Chicago. The property in question, 547 and 549 Wabash avenue, in the city of Chicago, which was alleged to have been sold through the efforts of appellees, was at the time the alleged services were rendered, owned by the mother and wife of appellant.

Appellees were licensed real estate brokers in the city of Chicago during the years of 1889 and 1890.

Appellees being employed and authorized by appellant to find a purchaser for the property in question, it appears that in the latter part of May, 1890, William P. Porter, who was a member of the appellees' firm, went to Day, the appellant, and submitted to him an offer of $35,000 for the property, saying that he had a party who was interested in Wabash avenue property, but whose name he did not disclose, and who offered that sum for the property. This offer was submitted on behalf of David E. Corneau. Mr. Day declined the offer of $35,000. Appellee reported to his customer, Corneau, that the offer of $35,000 was declined, and Mr. Corneau wanted to know if $40,000 would buy the property. Appellee replied that he would go and see Mr. Day. He went to Mr. Day and asked him if $40,000 would buy the property. Mr. Day said that the price was $45,000. Appellee then reported to Corneau that the offer of $40,000 had been refused. Corneau considered it, and then instructed Porter to offer $40,000. Porter then went to Mr. Day and offered on behalf of Corneau $40,000, and Mr. Day declined that offer and said the price was $50,000. Porter then had a further conversation with Corneau, and he wanted to know if $45,000 would then buy the property. Porter said he would see Mr. Day in order to find out. He went to Mr. Day, and Day said the price was $50,000. Porter then reported to Corneau that Day had refused $45,000, and that his price was $50,000.

Three offers were made during the latter part of May and in June, the last one being as late as June 25th or 26th, a few days before the sale. Corneau had not broken off negotiations thus inaugurated, nor had he declined to make further offers, or to negotiate for the property through Porter Bros.; to use his own words, he was still " holding it under consideration," and "had not abandoned the idea of buying it," up to the time he actually closed for it. His attention was first directed to the property by appellees.

Some few days after the submission of the last offer of $45,000 by Porter, Wilson sent for Day to come to his office, and he there for the first time met David E. Corneau and there learned for the first time that Porter had ever spoken to Corneau about the property. This took place on the 30th of June, 1890.

Appellant then wrote a letter to appellees that he had given Wilson the exclusive agency of the property, and afterward, through Wilson, and at Wilson's office, concluded a trade with Corneau, by which Corneau agreed to pay the sum of $50,000 for the property, and which agreement was fully consummated by a deed of the property on those terms, made on the 3d day of July, 1890.

Appellees brought suit and have recovered commission on the sale of the property to Corneau.

HOYNE, FOLLANSBEE & O'CONNOR, attorneys for appellant.

ALBERT C. BARNES, attorney for appellees.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

Appellant employed appellees to sell his property. They went to work and had negotiations with Mr. Corneau, obtaining an offer equal to what appellant had at first asked for his land, but not equal to the increased price to which from time to time he raised his terms. The customer whom appellees had found, whose attention they had first engaged,

having yet the matter of purchasing under consideration, went to the office of another broker. Appellant was sent for and there informed that appellees had been negotiating with such customer, Mr. Corneau. Appellant then and there, without giving to appellees any time in which to carry to a successful end the negotiations they had begun, wrote them a letter terminating the agency.

If appellant had then sold the property to Mr. Corneau, without the intervention of Mr. Wilson, we think no one would have doubted the right of appellees to commissions on the sale.

Knowing that appellees were, by his procurement, negotiating with and had procured an offer from Mr. Corneau on the 25th, and were still endeavoring to sell to him, he could not on the 30th, without giving them a reasonable time in which to effect a sale, avail himself of their efforts and deprive them of all compensation, by suddenly terminating their employment.

The principal can not, when the broker's efforts have resulted in negotiations for a sale and the expected customer still has the matter under consideration, step in, and, taking up the unbroken thread by which broker and customer are connected, weave it into a completed fabric and escape liability for the work of his agent he has thus turned to profit. Mechem on Agency, Sec. 967; Keys v. Johnson, 68 Penn. State 42; Chilton v. Butler, 1 E. D. Smith, 150.

Where no time within which a broker is to sell is fixed, he is entitled to a reasonable time. Mechem on Agency, Sec. 968.

The verdict of the jury in this case must be held as establishing that appellant, when the negotiations of appellees with the customer were in progress, terminated their authority for the purpose of avoiding the payment of commissions to them. We think that there was evidence warranting such conclusion.

If appellant, without notice of the negotiations with Mr. Corneau, had sold to him, the case would be different; or if appellant had gone to appellees and limited them to a reason-

ably short time in which to sell to Mr. Corneau, and after the expiration of such time had sold, either personally or through another broker, appellees' claim would not have stood as it stands now.

As we have before said, between principal and broker, the utmost good faith must be exercised.

We think that Mr. Corneau was properly permitted to answer that he had the matter under consideration, and had not abandoned the idea of buying it when the employment of appellees was revoked.

In the case of Mansell v. Clements, L. S., 9 C. P. 139, the right to ask a similar question was sustained.

We perceived no such error as to giving or refusing instructions as would justify the reversal of the judgment in this case, and it is affirmed.

SHEPARD, J., took no part in this case.