WESTERN PRIDE BUILDERS, INC., Plaintiff-Appellant, *v.* HELEN ZICHA, Defendant-Appellee.

(No. 58255;

First District (2nd Division)—October 15, 1974.

Barry B. Nekritz, Dean A. Dickie, and Thomas M. Harris, all of Chicago (Aaron, Aaron, Schimberg & Hess, of counsel), for appellant.

Frank J. Toman, of Berwyn, for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Western Pride Builders, Inc., the plaintiff, a licensed real estate broker, appeals from a judgment entered in a suit it filed against Helen Zicha. The complaint alleged that, at her request, plaintiff procured a ready, willing and able buyer who, at a price of $47,500, purchased a building owned by defendant; and that, as ·a result, she owed the plaintiff a real estate brokerage commission of $2,850. After a trial without a jury, the court ruled in defendant's favor, with costs. The issue in this appeal is whether the trial court erred in finding that plaintiff was not the procuring cause in the sale of the building and in concluding that plaintiff could not recover a real estate brokerage commission from defendant.

On June 1, 1964, defendant purchased a building situated at 5855 West 35th Street in Cicero, Illinois. Victor and Virginia Conforti were in possession of the property as leasehold tenants. A month or so later, defendant decided to sell. She tried to interest the Confortis; and for a period of more than 6 years, she discussed sale of the property with them. However, the Confortis never made an acceptable offer.

Early in December 1970, defendant placed the building with the plaintiff on an open listing. There was no restriction with regard to dealings with tenants of the building. Therefore, a few days later, plaintiff communicated with the Confortis; and as a result, they made an offer

of $45,000. Defendant was advised; and thereafter, she met two officials of the firm in their brokerage offices, where she told them that she would be willing to accept the sum of $47,000 if from that amount she received a net of $45,000. Following this meeting, plaintiff continued negotiations with the Confortis and obtained from them a signed contract in which they agreed to buy defendant's building for $47,000. The contract was sent to defendant; and about 7 days later, when plaintiff's president called to ascertain her decision concerning it, defendant said she had sent the matter to her attorney and was waiting to see what he was going to do. Later, when plaintiff did not receive any communication from defendant, its president called her and she referred him to the lawyer. When the lawyer was contacted, he said that defendant's building was being handled on an exclusive listing by his son, who was a real estate broker. On April 19, 1971, the Confortis, with the lawyer's son as the broker, signed a contract by which they agreed to buy defendant's building for $47,500. The transaction was closed on June 1, 1971.

After learning of this fact, plaintiff filed its complaint. Defendant answered and admitted plaintiff obtained from the Confortis an offer to purchase her building; and that on a real estate sale of $47,500, the broker's commission was $2,850. Then, after discovery proceedings were completed, the case went to trial without a jury. The court heard evidence from which it found that the Confortis were tenants with whom defendant had negotiated for the sale of the building before plaintiff got them to make an offer; and that after the contract was signed, plaintiff, although claiming it was the real estate broker, did nothing to complete the sale. Therefore, the court found the plaintiff firm was not the procuring cause of the sale and concluded that it was not entitled to receive a real estate brokerage commission from defendant for the purchase of her building by the Confortis.

The evidence in this record proved that early in December 1970, defendant listed her building with the plaintiff and gave it the authority to procure an acceptable, ready, willing and able purchaser. On December 12, after some discussion with defendant, plaintiff obtained a $47,000 offer from the Confortis. According to Virginia Conforti, she and her husband made the offer by a contract which they signed with intent to purchase defendant's building. When defendant testified, first as an adverse witness and later on her behalf, she did not give positive testimony concerning the $47,000 offer. She answered three questions in the negative, saying, "I don't recall," "I don't have it" and "I have not seen it." In contrast, plaintiff's president testified positively, that after receiving the Conforti contract, he sent the original to defendant; and later, in a

conversation with her, she told him she sent it to her lawyer and was waiting his response.

■■ As a rule of evidence, it is said that negative testimony does not raise an issue of fact. (See *Chicago & Alton R.R. Co. v. Gretzner*, 46 Ill. 75; *Robertson v. New York Central R.R. Co.*, 388 Ill. 580, 58 N.E.2d 527.) In this case, defendant's testimony was negative. At best, it amounted to saying that she could not remember seeing or receiving the $47,000 offer. Her testimony, contradicted by a copy of the contract and by the positive testimony of the firm's president, did not refute plaintiff's claim that the $47,000 offer was sent to her; that she received it; and that she considered it and sent it to her lawyer. (See *Gates Rubber Co. v. USM Corp.* (S.D. Ill. 1972), 351 F.Supp. 329.) Therefore, plaintiff proved that on or about December 12, 1970, defendant placed with it her real estate in order that plaintiff could find a ready, willing and able purchaser; that plaintiff found one; and that while negotiations were in progress from its efforts, an offer from the Confortis was sent to defendant. The offer was not rejected; plaintiff's agency was not terminated; and consideration of the offer was undertaken by defendant.

■■ The law governing the relation between an owner of real estate and a broker is well settled. An owner cannot, in the midst of negotiations, withdraw the agency and thereby deprive the broker of his commission. (*Gleason v. McKay*, 37 Ill.App. 464; *Day v. Porter*, 60 Ill.App. 386, *affirmed*, 161 Ill. 235, 43 N.E. 1073; *Finkelstein v. Spurck*, 115 Ill. App. 521; see 12 C.J.S. *Brokers* § 85a (1938).) A real estate broker who by the terms of his employment brings an able and willing purchaser to the owner cannot be deprived of his commission simply because the owner completes the transaction himself, or through another broker, even though the sale is under different terms. (*Vancil v. Walter*, 323 Ill.App. 291, 55 N.E.2d 305.) Of course, to establish his right to a commission, the broker must prove he procured a prospective purchaser who was ready, willing and able to buy at the price fixed. (*Greenwald v. Marcus*, 3 Ill. App.2d 495, 499, 123 N.E.2d 139.) But if the owner approves of or enters into a contract with the purchaser, the readiness, willingness and ability of the latter is no longer open to question and the broker's right to compensation accrues whether or not the sale is completed. (*Bernard Klibanow & Company, Inc. v. Shafer*, 2 Ill.App.3d 392, 276 N.E.2d 446.) On the other hand, if the owner claims the broker abandoned the negotiations, the evidence must show not only a discontinuance of his efforts by the broker, it must show abandonment by the purchaser of all intention to buy the property. *Homann v. Wilson*, 87 Ill.App.2d 180, 230 N.E. 2d 486 (abstract opinion); compare *Mammen v. Snodgrass*, 13 Ill.App. 2d 538, 142 N.E.2d 791.

■■■ In the case before us, there was no evidence that defendant's prior negotiations with the Confortis were the cause of their decision to purchase the building in question. It was plaintiff, in its employment as defendant's broker, who procured their offer and who procured them as able and willing purchasers of defendant's real estate. Nor was there any evidence that plaintiff abandoned its efforts as defendant's real estate broker. Certainly, as Virginia Conforti's testimony proved, the purchasers procured by the plaintiff never abandoned their intention to buy the building in question. Defendant never rejected the offer from the Confortis which plaintiff sent to her; she did not terminate plaintiff's agency. As we said recently, "[a] broker's right to a commission depends on whether the sale was procured or effected through his efforts or through information derived from him, and cannot be defeated by the owner's making the sale himself or through another broker." *Van C. Argiris Co. v. Caine Steel Co.*, 20 Ill.App.3d 315, 314 N.E.2d 361.

Therefore, we are of opinion that the trial court erred when it found that plaintiff was not the procuring cause in the sale of defendant's building to the Confortis and in concluding that it was not entitled to a real estate brokerage commission. Accordingly, the judgment of the trial court is reversed; and there being no dispute between the parties concerning the amount of the commission due from the sale, judgment of this court is entered in favor of plaintiff in the sum of $2,850, with costs in the trial court and in this appeal.

Reversed; and judgment entered in this court in favor of plaintiff.

HAYES, P. J., and STAMOS, J., concur.