RICHARD A. GREIG, Plaintiff-Appellee, *v.* JOHN M. GRIFFEL *et al.*, Defendants-Appellants.

Second District (1st Division)    No. 75-382

Opinion filed June 15, 1977.

Donald Ridge, of Waukegan, for appellants.

Charles M. May, of May, Decker & Assoc., of Waukegan, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This case arises out of a collision which occurred in the early morning hours before dawn on November 22, 1971. Plaintiff Richard Greig, was driving his pickup truck in a westerly direction on Route 173 in Lake County, Illinois. The collision occurred when plaintiff ran into the rear of a semi-trailer dump truck which had also been proceeding in a westerly direction on Route 173 and which was either in the process of making or about to make a left turn off of Route 173 into a parking lot at the Thelen's g ivel pit. The dump truck was driven by defendant John Griffel who was the agent and employee of defendant Dan Lodesky Trucking, Inc. The main disputed issue in the case is whether or not the dump truck was properly lighted and whether defendant properly signaled the intention to make a left turn. In a two count complaint alleging both negligence and wilful and wanton misconduct, the plaintiff sued for property damage and personal injuries sustained as a result of the collision. The jury returned a verdict in favor of the plaintiff in the amount of $25,900. The defendants have appealed on numerous grounds.

The first issue raised by defendant Dan Lodesky Trucking, Inc., is that plaintiff's claim was barred for failure to file the action against it within the two years allowed by the applicable statute of limitations. The plaintiff asserts that the claim against the corporation is not barred because he comes within the requirements of section 46 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 46(4)). Although section 46(4) sets forth five requirements for bringing in a person as a defendant after the normal statute of limitations has run, the only requirement which is in dispute herein is whether the plaintiff met requirement "(b) failure to join the person as a defendant was inadvertent." The trial court denied the corporate defendant's motion to dismiss the complaint and also denied the post-trial motion which raised the issue again. In determining whether the failure to join the corporation until after the statute of limitations had run was inadvertent, the following chronology will be helpful.

November 22, 1971—Date of Accident.

February 3, 1972—original complaint filed naming John M. Griffel and Dan Lodesky as defendants.

March 6, 1972—both named defendants file a joint answer which admits that John M. Griffel was driving the dump truck in question but denies all other relevant allegations as to Griffel's status as a duly authorized agent, servant and employee of Lodesky and all allegations going to ownership of the vehicle.

October 10, 1972—both defendants given leave to file answers to interrogatories instanter; answers filed only by Griffel. They disclose that he was not the owner of the vehicle involved in the occurrence and in response to a request for the names and addresses of all persons not previously listed who had knowledge of the facts of the occurrence of any injuries or damages therefrom stated, "None." So far as we are able to discover, defendant Dan Lodesky never filed any answers to the interrogatories.

October 8, 1973—discovery deposition of defendant Griffel taken. The deposition contains references to "Dan Lodesky Trucking" several times and one reference to "Lodesky Trucking Company."

November 22, 1973—2-year statute of limitations runs.

June 18, 1974—plaintiff granted leave to file amended complaint joining Dan Lodesky Trucking, Inc., as an additional party defendant and amended complaint filed. The motion was supported by a memorandum and affidavits from both the plaintiff and plaintiff's newly engaged attorney to the effect that neither was aware of the fact that Dan Lodesky Trucking, Inc. was the owner of the vehicle involved in the collision with the plaintiff before May 30, 1974.

The corporate defendant argues that by virtue of the original answer filed in March 1972 and the answers to interrogatories filed thereafter, the plaintiff knew or should have known that Dan Lodesky was not the owner of the dump truck for over a year before the statute of limitations ran. It further argues that even if plaintiff did not know earlier, he should have known as a result of the discovery deposition of Griffel which was taken shortly before the statute of limitations ran. In addition, defendant points to the sheriff's traffic accident report which listed the owner of the vehicle as being "Dan Lodesky (Trucking)."

■■ One of the earliest cases interpreting the inadvertence requirement of section 46(4)(b) adopted as the meaning of the word "inadvertent"—"Not turning the mind to a matter; heedless; negligent; inattentive; * * *." (*Silver v. Lee Shell Equipment Corp.* (1961), 31 Ill. App. 2d 266, 269, 175 N.E.2d 287, 289.) This definition has been consistently followed in the later cases. (See, *e.g., Bates v. Wagon Wheel Country Club, Inc.* (1971), 132 Ill. App. 2d 161, 266 N.E.2d 343; *Paku v. M.V. Leasing Corp.* (1971), 2 Ill. App. 3d 742, 277 N.E.2d 335.) We note also that a plaintiff who comes within the provisions of the act should be given a reasonable period within which to take steps to add the proper parties after receiving knowledge of their existence (*Fields v. 6125 Indiana Ave. Apartments, Inc.* (1964), 47 Ill. App. 2d 55, 196 N.E.2d 485), but that the statute was not intended to include within the purview of the word "inadvertence" excusable failure to act after the true facts were

discovered. *Robinson v. Chicago National Bank* (1961), 32 Ill. App. 2d 55, 176 N.E.2d 659.

We have examined the cases cited by the parties herein as well as numerous others and have found no case directly deciding the issue herein. We note initially that this is not a case in which plaintiff had actual knowledge of the existence of the corporate defendant before the statute of limitations ran. (See, *e.g., Paku v. M.V. Leasing Corp.; Horan v. Brenner* (1965), 57 Ill. App. 2d 83, 206 N.E.2d 488; *Solone v. Reck* (1965), 55 Ill. App. 2d 282, 204 N.E.2d 614; *Robinson v. Chicago National Bank.*) To the contrary, both the affidavits of plaintiff and plaintiff's attorney indicate no actual knowledge until shortly before the amended complaint was filed. On the other hand, this is not a case wherein the actions of the defendants were aimed at actually covering up and secreting from the plaintiff the names and identities of the true defendants. (See, *e.g., Bates v. Wagon Wheel Country Club, Inc.; Cody v. Ladurini* (1969), 109 Ill. App. 2d 116, 249 N.E.2d 315.) While the corporate defendant is perhaps correct in asserting that it has no duty to inform plaintiff of the correct defendant, we cannot agree with their assertion that it would have been improper for them to do so. Rather, we point out that it has certainly been common practice for defendants to do so in the past in their answers or in response to interrogatories which were not completely dissimilar to those tendered by the plaintiff in this case. (See, *e.g. Paku v. M.V. Leasing Corp.; Solone v. Reck.*) Neither can we condone the inaction of plaintiff and the first two attorneys engaged to represent him in this matter. We believe this is a case of negligent and incomplete investigation of the facts. Nevertheless, we believe this type of negligence falls within the definition of inadvertence set forth above. We also note that plaintiff and his third attorney acted with reasonable dispatch to add the corporate defendant after actual discovery of its existence. We therefore hold that under the circumstances of this case, the plaintiff met the requirement of inadvertence in section 46(4)(b) and that the trial court properly overruled the corporate defendant's motion to dismiss.

■■ Both defendants contend that the trial court committed reversible error in the admission of plaintiff's exhibits 1 through 11. These exhibits are black and white Polaroid photographs, together with enlargements thereof, which show the rear of defendants' truck. Defendants challenge the evidence, basically on two grounds: first, that no proper foundation for the admission thereof was laid and, second, that even if the proper foundation were laid the court should have given an instruction limiting the purposes for which the jury could consider these photographs. The foundation requirements for the admission of a photograph into evidence are well established.

"In order to have a photograph admitted in evidence it is only

necessary that the photograph be identified by a witness as a portrayal of certain facts relevant to the issue and verified by such witness on personal knowledge as a correct representation of the facts. The witness need not be a photographer, nor need he know anything of the time or condition of the taking, but he must have personal knowledge of the scene in question and testify that it is correctly portrayed by the photograph." (*Clauson v. Lake Forest Improvement Trust* (1971), 1 Ill. App. 3d 1041, 1047, 275 N.E.2d 441, 445.)

In the case before us the parties hereto entered into a stipulation, the relevant part of which reads as follows:

"IT IS HEREBY STIPULATED and AGREED by and between the parties hereto, through their respective attorneys, that at the trial of this cause certain Polaroid photographs of the rear portion of defendant LODESKY'S trailer vehicle hearing Illinois license 101729 ST (June, 1972) fairly and reasonably depict the condition of said trailer immediately after the collision of November 22, 1971."

While it is true that in the case before us no witness testified to the accuracy of the scene depicted by the photographs, we believe the stipulation of the parties provided an adequate foundation for their admission.

■■ The law in Illinois with regard to stipulations was set forth long ago in *City of Chicago v. Drexel* (1892), 141 Ill. 89, 104, 30 N.E. 774, 779:

"A solemn stipulation by a party as to the facts, so long as it stands, is conclusive between them, and can not be met by evidence tending to show that the facts are otherwise. If a stipulation has been entered into unadvisedly or through misinformation, the party injured should seek, by some direct proceeding, to have it set aside and cancelled, but such party will not be permitted to dispute by evidence a fact solemnly admitted by such stipulation, the stipulation being still in force."

See also *Montgomery Ward & Co. v. Industrial Commission* (1922), 304 Ill. 576, 578, 136 N.E. 796, 797, where the Supreme Court said:

"Parties will not be relieved from stipulations in the absence of a clear showing that the matter stipulated is untrue, and then, only, when the application for such relief is seasonably made and good cause is shown for granting it."

The continued validity of these rules with regard to stipulations has been recognized in *In re Estate of Moss* (1969), 109 Ill. App. 2d 185, 192, 248 N.E.2d 513, 516, wherein the court stated:

"The reviewing courts of this state have consistently held that stipulations by parties or their attorneys affecting the conduct of

suits will be enforced, unless there is proper showing that any stipulation is unreasonable, violative of public morals or the result of fraud."

In the case before us defendants made no formal request to be relieved from the effect of their stipulation. However, defendants have at all times herein made clear to the trial court, the jury and this court their position that the photographs were taken later on the day of the accident and not immediately after the collision, and that during the intervening period the truck in question had been used to haul and dump a load of gravel. Overlooking for the moment the fact that no formal request to be relieved of the stipulation was made, this argument of defendants seems to go to attempting to show that the matter stipulated was in fact untrue. In essence what defendants showed was that the photographs were not taken immediately after the accident and further that the truck was used in the intervening period before the photographs were taken. There was certainly no direct showing that the condition of the truck depicted in the photographs was not the same as the condition of the truck immediately after the accident. Also, we have in the record before us the stipulation in question. We note that, with regard to the portion of the stipulation dealing with the photographs here in question, the parties obviously engaged in some sort of discussion and negotiations because certain portions of the original wording of the stipulation have been crossed out. Under these circumstances we believe that the evidence adduced by the defendants herein falls far short of a "clear showing that the matter stipulated is untrue," and thus furnished no basis for setting aside the stipulation. Defendants, therefore, could properly have been considered bound by their stipulation and denied any opportunity to present evidence which might tend to contradict it. However, as we have just stated, defendants were allowed to present the evidence concerning the time the photographs were taken to the jury and thus the jury was allowed to consider this evidence, which is beneficial to the defendants, as well as the photographs themselves, which the jury might reasonably interpret as being evidence adverse to the defendants. We therefore find no merit in defendants' argument that the photographs in question were admitted without a proper foundation.

■■ We turn now to defendants' other argument that plaintiff's exhibits 1 through 11 should have been admitted only with an instruction to the jury concerning the purposes for which they could be used. At the time the photographs were admitted into evidence defendants objected and requested an instruction to the effect that these photographs should be admissible only for the purpose of showing the damage done to defendants' truck as a result of the accident. The trial court overruled this objection and the photographs were eventually admitted with no limiting

instructions whatsoever. On this appeal defendants have renewed their argument that the requested limiting instruction should have been given and further argue that the photographs were misleading and created in the mind of the jurors the impression that the photographs showed the condition of defendants' truck immediately *prior* to the accident. We must agree with defendant that these particular photographs could not properly be regarded as direct evidence of the condition of defendants' truck prior to the accident. Our examination of the record herein, however, shows that both plaintiff's and defendants' counsel, as well as all of the witnesses examined in this connection, clearly stated numerous times that the pictures were taken *after* the accident and that they showed the condition of the truck *after* the accident. The jury also heard testimony from the defense witnesses that as a result of the collision there was a considerable amount of dirt, debris and liquid on the pavement and the defense theory that some of this matter was also thrown upon the rear portion and undercarriage of defendants' dump truck. So far as we are able to determine, there was no instance herein in which anyone stated to the jury that these particular photographs showed the condition of the truck *before* the accident. Therefore, we do not believe that the jury was misled into believing that the photographs themselves were direct evidence of the condition of the defendants' truck prior to the accident.

■■ The next question in this regard is whether the jury could properly consider plaintiff's exhibits 1 through 11 as circumstantial evidence in connection with the issue of whether defendants' truck was properly equipped, lighted and therefore visible before the accident. We have carefully examined the cases cited to us by the parties herein as well as numerous others and find none of them to be dispositive of the question presented. Rather, we agree with the statement of the court in *Grand Trunk Western R.R. Co. v. M.S. Kaplan Co.* (1963), 43 Ill. App. 2d 230, 238-39, 193 N.E.2d 456, 461, that:

> "There is not and there cannot be any hard and fast rule of exclusion for evidence of this kind. Whether evidence of a condition properly 'relates backward' depends upon the character of the condition itself, whether permanent or transitory; upon the apparent likelihood of intervening alteration, through natural forces or human interference; and finally upon the length of time which the inference of unchanged condition must span."

Applying these standards to the evidence herein, we note initially that the condition of the dirt upon a vehicle is generally transitory in nature. However, we also note that the time span involved herein (from immediately before until immediately after the accident in question) was only a few minutes at most and that there was no likelihood of human interference with the condition of the truck during this extremely short

time period. Further, we believe that the question squarely presented to the jury, and which the jury had to answer in this case, was whether the condition of the truck was caused by the accident itself and the intervening use of the defendants' truck or whether it was pre-existing. The jury heard evidence tending to support either conclusion and this was a matter properly left to the jury to resolve. Thus we must conclude that the photographs in question were competent evidence to be considered by the jury on the issue of the visibility of defendants' truck prior to the accident and that the trial court did not err in refusing to instruct the jury that these photographs could be considered solely for the purpose of proving the extent of damage done to defendants' truck by the accident.

In their brief, defendants also seem to take the position that the court, *sua sponte,* should have instructed the jury that the photographs only showed the condition of the truck immediately after the accident. Initially we note that defendants did not request such an instruction at the time the photographs were admitted and thus might be considered to have waived the issue. (*Eizerman v. Behn* (1956), 9 Ill. App. 2d 263, 280, 132 N.E.2d 788, 796.) Having considered this matter, however, we can find no prejudicial error in the way this matter was handled at trial. Defendants have not submitted any suggested instruction concerning this issue to us and we are unable to conceive of any such instruction which would differ substantially from the wording of the stipulation which the parties entered into and which was read to the jury. Additionally, we have previously noted the care with which all parties involved herein clearly stated to the jury that the pictures showed the truck after the accident. Again, we can find no basis for concluding that the jury was misled to believe that the pictures showed anything other than the truck after the accident and we find no error in the fact that the trial court, *sua sponte,* failed to so instruct the jury.

Defendants next contend that the trial court erred in refusing to permit defense counsel to cross-examine plaintiff and impeach him with a prior inconsistent statement concerning his legal residence. Defendants' offer of proof on this issue shows clearly that the goal of the cross-examination on residency was to show that approximately one month before the collision took place plaintiff had submitted a statement to his employer, the Chicago Fire Department, listing his legal residence as being within the city limits of Chicago. This was at variance with plaintiff's trial testimony that at the time of the accident, and for a number of years prior thereto, he had resided near Antioch, Illinois, and had only moved to the city of Chicago in December of 1974. As was made clear in defendants' reply brief, the strategy of defense counsel in this regard was to argue that since the plaintiff had lied to his employer about his residence perhaps he was lying to the jury about the facts concerning the accident. In support of this

contention of error defendants rely principally upon *Roewe v. Lombardo* (1966), 76 Ill. App. 2d 164, 221 N.E.2d 521. The claim of error involved in the *Roewe* case was that the trial court had allowed too much cross-examination on the subject of the defendant's residence. The court noted the general rule that the trial court has broad discretion in controlling the scope of cross-examination and that a reversal is required only if that discretion is clearly abused and the abuse has materially affected the results of the trial. The court held, however, that the trial court did not abuse its discretion by permitting cross-examination to the extent allowed. These facts, of course, are the opposite of what is involved in this case.

Our examination of the Illinois cases concerning cross-examination on the subject of residency indicates that the only cases which have held that there was prejudicial error in the denial of cross-examination are criminal cases involving the use of informers. (See, *e.g. People v. Dunams* (1969), 118 Ill. App. 2d 76, 254 N.E.2d 582.) Even in criminal cases, however, Illinois has adopted the position that the denial of cross-examination on the related question of place of employment does not necessarily require a new trial. (*People v. Durley* (1972), 51 Ill. 2d 590, 283 N.E.2d 882.) There is also a line of cases recognizing the rule that testimony on collateral or immaterial matters is not subject to impeachment by proof of prior inconsistent statements. (*Sullivan v. Fawver* (1965), 58 Ill. App. 2d 37, 205 N.E.2d 492; *Rose v. B. L. Cartage Co.* (1969), 110 Ill. App. 2d 260, 249 N.E.2d 199.) Further, it has been held that evidence relating to specific prior acts or lies unrelated to any material issue in the case on trial is properly excluded. (*Rose v. B. L. Cartage Co.; Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 656, 299 N.E.2d 108.) While we realize that the questions involved herein dealt with a subject upon which it is normally proper to cross-examine a witness to test credibility, it is also clear that the questions were aimed at a specific prior act of plaintiff which was totally unrelated to the important issues involved in this case. Under these circumstances we are unable to say that the trial court abused its discretion in limiting the scope of cross-examination of the plaintiff.

Defendants also contend that the trial court erred in admitting a survey of the site of the accident made shortly before trial. Their basic contention is that the survey was admitted without proper foundation testimony that the conditions in the area had not changed between the time of the accident and the time the survey was made. The survey was offered into evidence during the surveyor's testimony. The trial court initially sustained defendants' objection to the admission of the survey for lack of foundation testimony, whereupon the following conversation took place between plaintiff's counsel and the court:

"MR. MAY: I have to promise the Court that I will connect that

up through testimony of other witnesses who are yet to come.

THE COURT: All right, the Court will reverse itself at this time."

Several questions later the court made the following statement, "Show that objection while ago is overruled." Defendants' main complaint concerns the last statement by the court. They contend that the court should have reserved its ruling on the survey until after the foundation testimony was presented, which apparently is what the court had started to do previously.

We must agree that the court's last statement makes the ruling upon this particular issue less than perfectly clear. We note, however, that defense counsel made no request at any point during the trial to have this particular ruling clarified. We further believe that the defendants were not injured in any way by the court's ruling upon this matter. The trial court was clearly acting within the scope of its discretion in accepting counsel's promise to connect up the survey with proper foundation testimony. In addition, defense counsel obviously did not consider himself concluded by the trial court's ruling. When plaintiff's counsel attempted to establish the foundation for the survey by asking plaintiff if the terrain or conditions in the area which had existed on the day of the accident had changed, "from then until now," defense counsel objected, stating as his reason that the plaintiff was not a surveyor. Defendants do not assign the overruling of this stated objection as error, but instead contend now that,

"The testimony of the plaintiff came in response to a leading question propounded to him by his attorney and no testimony was illicited from the plaintiff which would establish that he had been at the scene recently, and that it was the same as it was four years prior."

The defense made a specific objection which was properly overruled. Nothing in the particular objection indicated any objection upon these bases urged now. It is well established that a party objecting to the introduction of certain evidence must specify the particular objection in all instances in which the objection might be corrected by the adverse party if it had been pointed out at the appropriate time. (*Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 343 N.E.2d 207; *Bear v. Holiday Inns of America, Inc.* (1971), 1 Ill. App. 3d 786, 275 N.E.2d 457.) Plaintiff's testimony indicated that there had been no changes in the area from the date of the accident "until now," and further that Thelen's office, parking lot and gravel pits, and the width of Route 173, all remained unchanged. The alleged errors, if any, in the foundation testimony of the plaintiff were therefore such as could probably have been corrected if they had been pointed out at that time. Thus, the point concerning lack of

proper foundation testimony has been waived for failure to specifically object at the appropriate time.

■■ Upon this basis we might also properly conclude that the error, if any, in the foundation testimony for the survey was waived and therefore the survey itself was properly admitted. Under the circumstances here presented, however, defendants had an additional opportunity, of which they did not avail themselves, to challenge the admission of the survey on the grounds of insufficient foundation. It has long been the rule in Illinois that when counsel has promised to connect up evidence to make it admissible and thereafter fails to do so, the opposing counsel must move to strike the unconnected and therefore inadmissible evidence, or the point is waived. (*Craft v. Acord* (1974), 20 Ill. App. 3d 231, 313 N.E.2d 515; *Lindsey v. Rosen* (1929), 255 Ill. App. 21.) Defense counsel never moved at any time to strike the survey for lack of proper foundation and we therefore deem the error, if any, in its admission, waived.

Defendants also contend that the trial court committed error by permitting counsel for the plaintiff to ask one of the defense witnesses whether defendant Griffel's testimony that he was stopped or just barely moving at the time of the collision was "at variance" with that particular witness's testimony. Over defense counsel's objections, the witness was permitted to answer as follows:

"From the way I seen it, yes, it would be different."

■■ In support of this argument defendants rely upon *Teece v. Bieber* (1944), 323 Ill. App. 647, 56 N.E.2d 665 (abstract), and *Ryan v. Monson* (1961), 33 Ill. App. 2d 406, 179 N.E.2d 449. In both of those cases a party to the lawsuit was forced to answer questions concerning the truth or falsity of another witness's testimony. Such questions clearly force the witness to judge the veracity of another witness's testimony and are improper. The questions involved herein, however, do not put the particular witness in exactly that position. They appear to be more similar to the questioning involved in *Champion v. Knasiak* (1974), 25 Ill. App. 3d 192, 323 N.E.2d 62, and *People v. Morse* (1975), 33 Ill. App. 3d 384, 342 N.E.2d 307. In these two cases the respective appellate courts reached opposite conclusions concerning a situation wherein the defendant was cross-examined concerning the statements of other witnesses. In *Champion* the court held that it was error to permit such cross-examination, noting particularly that it placed the defendant in a bad light before the jury and that the defendant had appeared hard pressed to answer the question involved. In *Morse*, however, the court concluded that since the questions involved only whether the particular witness's testimony had been "wrong" or "mistaken," that the defendant was not improperly forced to judge the truthfulness of the other witnesses but was in fact being cross-examined concerning his alibi. Neither of these cases is

exactly dispositive of the issue herein, however. We are inclined to believe that a question involving a variance in the testimony, or whether a previous witness had been wrong or mistaken, does not necessarily force the witness being questioned to judge the truthfulness and veracity of the prior witness. We note, however, that it is indeed a very fine line between this type of question and that involved in *Teece* and *Ryan*. We believe all such questioning is improper and given the proper circumstances, there is no question in our minds that the type of questioning involved herein could constitute reversible error. In this particular case, however, we note that it was not a party who was forced to answer the question and that the witness apparently had little trouble answering it. Further, it was an isolated question in the middle of cross-examination which did not receive any particular emphasis. Under these circumstances we find there was no reversible error in this regard.

Defendants also argue on this appeal that the arguments and conduct of plaintiff's counsel throughout the trial were prejudicial to the defendants and resulted in the denial of a fair trial to them. Defendants first assignment of error in this regard relates to a statement made by plaintiff's counsel during opening argument. Defendants' objection to the particular statement was sustained and the court immediately advised the jury that what the attorneys had to say was not evidence and that their statements only concerned what they thought the nature of the evidence to be produced at trial would show. We are of the opinion that the prompt action of the trial court avoided any possible prejudicial effect which the particular statement might have had. *Walters v. Taylor* (1976), 36 Ill. App. 3d 934, 344 N.E.2d 765.

■■ Secondly, defendants complain of an instance during the cross-examination of a defense witness wherein both counsel and the court engaged in a discussion of the relevancy of a particular question put by plaintiff's counsel. While we agree with defendants that it is improper to engage in extended legal arguments before the jury, we note that when it became apparent to the trial judge that the discussion was going to be extended, he sent the jury out. After the matter was settled out of the presence of the jury, the trial court specifically instructed the jury to disregard the last few moments of what transpired before they were taken out of the courtroom. Further, the trial court admonished the jury generally that any exchange between the attorneys or between the attorneys and the court was to be ignored by the jury in reaching its decisions. Again we are of the opinion that the trial court's curative action in instructing the jury to disregard the matter was such that there was no improper prejudice to the defendant as a result of the particular exchange.

Defendants remaining allegations concerning the improper arguments

of plaintiff's counsel relate to plaintiff's closing arguments. Defendants specifically object to four separate statements made by plaintiff's counsel. We note, however, that defense counsel made no objections to two of these statements at the time they were made. One related to a comment on matters irrelevant to the particular issues in this trial and the other to an alleged personal attack upon defense counsel. While we must agree with defense counsel that it is unnecessary to repeatedly make the same objection during arguments of counsel in order to preserve it, we are not convinced that this is a proper case for the application of that rule. There were four separate instances concerning four separate subjects to which defendants now object. Interestingly enough, in the reply brief defendants' counsel characterized the alleged personal attack upon his associate as "the least offense of the remarks that were made by plaintiff's counsel during closing arguments." In addition, we note that the reference to irrelevent matters, to which an objection should have been sustained if made, covered only three sentences in plaintiff's closing argument, which stretches over approximately 23 pages of the record. With this in mind, and having read the entire closing arguments made by both counsel, we are of the opinion that there is no reason to relax the waiver rule as to these two particular arguments. *Bruske v. Arnold* (1970), 44 Ill. 2d 132, 254 N.E.2d 453.

■■ Defendants also challenge a statement made by plaintiff's counsel in closing argument that the headlights of plaintiff's automobile on low beams illuminated the road for about 50 or 60 feet in front of his truck. Although defense counsel claims that there was a conflict during the trial on this matter, our examination of the record herein indicates that at most counsel misstated plaintiff's testimony that his headlights on low beams illuminated approximately 40 or 50 feet in front of the vehicle. We note, however, that defense counsel was given the opportunity to, and did in fact, correct this misstatement in his own closing arguments to the jury. In addition the jury was properly instructed to disregard anything which the attorneys said in closing argument which was not supported by the evidence. Moreover, the distance which plaintiff's headlights illuminated on low beams appears to us to be only a minor issue in the trial because defendant Griffel admitted seeing the headlights of plaintiff's vehicle. For these reasons we find that this particular misstatement by counsel furnishes no grounds for a reversal of the judgment entered herein.

Defendants' fourth allegation of error in relation to the closing argument of plaintiff's counsel regards a summary of some evidence which plaintiff's counsel characterized as showing that the defendants were engaging in "business as usual" following the accident. Although defense counsel contends that this argument was unsupported by the evidence, our review of the evidence indicates that most of the argument

was in fact supported by the evidence, viewed favorably to the plaintiff, of course. The statement did overlook certain facts which were favorable to the defendant but we know of no rule which requires plaintiff's counsel to include all of the facts favorable to the defendants in his closing argument.

■■ Our review of the entire argument of plaintiff's counsel to the jury convinces us that this particular series of comments was not such an appeal to the prejudice or sympathies of the jury as to constitute reversible error. One factor which we have considered in reaching this conclusion is the fact that all of these assignments of error in the conduct and arguments of plaintiff's counsel, including those which we have held to be waived, were brought to the attention of the trial court in defendants' post-trial motion and that the trial court denied said motion. It is well established that the determination of whether the comments of counsel are prejudicial to the right of a defendant to receive a fair trial is a matter resting in the first instance in the sound discretion of the trial court and that its ruling will not be disturbed unless there is a clear abuse of that discretion. The trial court, having heard all of the comments and arguments and further having the ability to observe the effect of those remarks upon the jury, is in a much better position that we are to judge the prejudicial effect, if any, of counsel's conduct. In this particular case we are unable to conclude that the trial court abused its discretion in this regard. *Walters v. Taylor; Galluccio v. Hertz Corp.* (1971), 1 Ill. App. 3d 272, 274 N.E.2d 178.

Defendants also contend that the trial court erred in denying defendants' motions for a directed verdict made both at the close of plaintiff's case and at the close of all the evidence and further that the court erred in denying their motion for a judgment notwithstanding the verdict. In order to rule in defendants' favor upon these motions we would, of course, have to conclude that all of the evidence, when viewed in an aspect most favorable to the plaintiff so overwhelmingly favored the defendants that no contrary verdict could ever stand. *Pedrick v. Peoria and Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Without unduly prolonging this opinion by setting out the testimony of all the witnesses at length, we will attempt to summarize it at this point. Plaintiff testified that he had been following a truck which turned off shortly before the collision took place. At that point he switched his headlights, which were in good working order, from low beams to high beams, whereupon he saw a big, black object about 100 feet in front of him. He was traveling within the speed limit, at between 50 and 60 mph, and immediately applied his brakes. The physical evidence shows that plaintiff's truck skidded 21 feet before the impact occurred. Plaintiff did

not know whether there were lights which were not visible on the big, black object which turned out to be defendants' truck, or whether the lights were not turned on. He saw no lighted taillights or other reflective devices on the black object. Defendant Griffel testified that he had completely washed the truck, cleaned it and performed a safety check on it on either the Saturday or Sunday immediately preceding the accident, which occurred on Monday morning. At that time he had cleaned all of the lights on the vehicle and they all worked. He also checked the lights Monday morning and found them all in working order and recleaned them. However, Griffel could not remember whether there were reflectors on the rear of the vehicle. He stated that he was stopped preparing to make a left turn into Thelen's parking lot when plaintiff ran into the rear of his truck. As a result of the collision he was pushed across the eastbound lane of Route 173 and his truck came to rest in a west/southwesterly direction in Thelen's parking lot. He also testified that some of the lights on the rear of the truck were still burning after the accident. In addition, defendant Griffel testified that immediately after the accident plaintiff told him that plaintiff did not know what had happened and must have fallen asleep. None of the other three men present at the time claimed to have heard plaintiff make such a statement and plaintiff denied ever making it. Several other witnesses, all of whom are truck drivers for defendant Dan Lodesky Trucking, Inc., testified that they saw the lights on defendants' vehicle working before and /or after the accident occurred. In addition, plaintiff's exhibits 1 through 11, which portrayed the defendants' truck immediately after the accident, showed that the back of the truck was obscured by some material which the jury could reasonably conclude was dirt in some places and possibly tar or some other very dark substance covering at least parts of the four lights on the rear of defendants' vehicle.

On this appeal defendants apparently do not contend that the evidence was insufficient to support a jury verdict that defendants were negligent in the operation and/or maintenance of their vehicle. The main controversy concerns whether there was evidence from which the jury could conclude that the defendants were guilty of wilful and wanton misconduct. We deem it necessary, therefore, to discuss several other points before ruling upon defendants' ultimate argument concerning their entitlement to a directed verdict or a judgment notwithstanding the verdict.

At several points in their brief defendants have asserted that plaintiff's testimony regarding the fact that he saw no lights is merely negative testimony which does not raise an issue of fact. For this proposition they rely upon *Western Pride Builders, Inc. v. Zicha* (1974), 23 Ill. App. 3d 770, 773, 320 N.E.2d 181, 183. For that proposition the court cited two much

older Illinois Supreme Court cases, both of which were decided before *Berg v. New York Central R.R. Co.* (1945), 391 Ill. 52, 62 N.E.2d 676. In *Berg* the Supreme Court said:

> "It is well settled that negative evidence is admissible where the attending circumstances are such as to show that it has some probative force. * * * To give it probative force, it must appear that the witness was in such proximity that he could have heard the sound had it been given, and that his attitude of attention was such that if the bell or whistle had sounded it would have attracted his attention." (391 Ill. 52, 60, 62 N.E.2d 676, 680.)

Measured by that standard, the Supreme Court in *Berg* concluded that the testimony of one of plaintiff's witnesses was of no value but that the testimony of three others had probative force in determining the facts at issue, namely whether or not a bell and/or whistle had been sounded, and that the conflicting evidence on the issue and the weight to be assigned to it was for the jury to decide. See also *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1970), 121 Ill. App. 2d 445, 257 N.E.2d 216.

■■ In the case before us the testimony given by plaintiff indicates that he was awake and not distracted by any matters other than driving his truck down the road, that he was observing the road in front of him and that as soon as he saw defendants' vehicle he applied his brakes. We, therefore, conclude that his so-called negative testimony did have probative value and did raise an issue of fact to be considered by the jury concerning whether or not the lights on defendants' truck were visible at the time of the collision. Since no weighing of evidence is involved in the motions under consideration at this point, we will not further discuss this matter.

■■ Defendants also rely upon *Greene v. Noonan* (1939), 372 Ill. 286, 23 N.E.2d 720, for the proposition that because the complaint herein charged both negligence and wilful and wanton misconduct and a general verdict was returned without specifying upon which count of the complaint it was based, the presumption is that the verdict is based upon the wilful and wanton count of the complaint. They further argue that plaintiff's evidence was insufficient to support the verdict reached by the jury upon the wilful and wanton count of the complaint. Plaintiff, however, takes the position that either the evidence was sufficient or that defendants have failed to properly preserve this issue for review, citing to us section 68 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 68.) Our examination of the record herein indicates that there is indeed some doubt whether the defendants properly complied with section 68(4) of the Civil Practice Act requiring the defendant to move to withdraw the ground of wilful and wanton misconduct from the jury on the basis of insufficient evidence. We believe, however, assuming, without deciding

that the matter was properly preserved for our review, that there was sufficient evidence upon which the jury could conclude that the defendants were guilty of wilful and wanton misconduct in either of two possible ways. First the jury might disbelieve defendant Griffel's testimony and conclude that no inspection of the rear of the dump truck was made but that the truck, which defendants admittedly knew, or should have known, collected dirt and other foreign matter upon the rear, was merely started and driven through the darkness on the morning in question with no visible rear lighting. Alternatively, the jury might have chosen to believe Griffel's testimony that an inspection was made but decided that from the other evidence concerning the condition of the truck Griffel did in fact discover the dirt or other substances on the rear of the vehicle, but chose to drive it anyway. In either case the jury could reasonably conclude that such conduct on the part of the defendants constituted a reckless disregard for the safety of others and therefore wilful and wanton misconduct.

■■  Defendants have also asserted that plaintiff failed to establish his own freedom from contributory wilful and wanton misconduct. In this regard, however, we have the benefit of the two special interrogatories submitted to the jury. In one, the jury found that the plaintiff was not guilty of contributory negligence and in the second the jury found that the plaintiff was not guilty of wilful and wanton misconduct which was the proximate cause of the collision. We believe that this matter, too, was properly submitted to the jury. The jury could well have chosen to disbelieve defendant Griffel's testimony that plaintiff stated immediately after the accident that he must have fallen asleep, especially in view of the fact that none of the other persons present at the scene heard any such statement. Likewise, the matter of whether or not the defendants' truck was lighted and visible from the rear was for the jury to decide. We are not convinced that this is a case in which plaintiff failed to see that which was clearly visible.

Finally defendants contend that even if they were not entitled to a directed verdict or judgment notwithstanding the verdict that their alternative motion for a new trial should have been granted because the verdict and the answers to the special interrogatories were against the manifest weight of the evidence. Insofar as this motion is concerned, of course, the court is entitled to weigh the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, 356 N.E.2d 32, 36.) In this regard we deem it necessary to return to the opinion in *Berg v. New York Central R.R. Co.*, wherein the Supreme Court also stated that:

> " * * * in weighing the testimony of witnesses who are otherwise equally credible, one of whom has testified positively to a fact while the other's evidence is negative, the positive testimony is

entitled to greater weight than the negative." (391 Ill. 52, 60, N.E.2d 676, 680.)

Defendants admit that both defendant Griffel and one of their other witnesses were impeached at the trial on the matter of their observation of the rear lights on defendants' vehicle. Another of defendants' witnesses claimed to have seen the turn signals on the front of the tractor working before the accident but had no knowledge of the lights on the rear of the trailer. That particular witness's testimony concerning where he was at the time the accident happened was contradicted by one of the other defense witnesses. Two additional witnesses claimed to have seen the lights burning on the rear of the defendants' truck after the accident had happened but neither could say whether the lenses covering the lights were clean or dirty. The final defense witness, who claimed to have seen all of the lights burning on the rear of the defendants' truck prior to the accident, also indicated that in his opinion the defendants' truck was moving at a rate of 35 to 40 mph whereas the other defense witnesses stated that defendants' truck was stopped or barely moving at the time. In addition to these facts, of course, all of these defense witnesses were employed by defendant Dan Lodesky Trucking, Inc. Defendants also claim that plaintiff was impeached concerning where he actually hit the defendants' vehicle. The testimony of the other witnesses indicate that the vehicle was hit on the rear. Plaintiff's testimony, however, was to the effect that he thought he hit the side of the trailer and went under it. During his deposition taken approximately 1½ years before trial, his testimony was not entirely clear. It might be interpreted as being that plaintiff hit the side of the tractor, as opposed to the side of the trailer, although he also stated at that time that he thought he went under the side of the trailer. Plaintiff's testimony to the effect that he had only a second or two in which to form his conclusions concerning the part of the vehicle which he hit was of course, uncontradicted. Plaintiff's testimony at trial was not clearly contradictory of that in his deposition. In this state of the evidence, the jury could well have concluded that plaintiff was merely mistaken in terms of which part of the vehicle he hit and that his impression that it was the side of the trailer was incorrect because in fact it was the rear of the trailer. We are not convinced that this is a case in which the testimony of all of the witnesses was equally credible. Thus their demeanor while testifying, which only the trial court and jury had the opportunity to observe, may well have been a crucial factor in the decision.

■■ It is, of course, well established that the weight of the evidence does not depend upon the number of witnesses testifying. (See, *e.g.*, *Effler v. Metzger* (1975), 29 Ill. App. 3d 55, 329 N.E.2d 327.) Thus the fact that defendants produced more witnesses did not require that the jury

accept their version of how this accident occurred. Given the state of the evidence concerning the lights on the rear of defendants' vehicle, we are not convinced that the verdict of the jury is against the manifest weight of the evidence.

We have examined defendants' other allegations of error in the conduct of the trial herein, and find no reversible error. Having concluded that there were no reversible errors committed by the trial court, we therefore affirm the judgment below.

Affirmed.

RECHENMACHER, P. J., and SEIDENFELD, J., concur.