AGRINETICS, INC., Plaintiff, *v.* ALBERT STOB *et al.*, Defendants.— (WES SCHARRINGHAUSEN, Cross-Plaintiff-Appellant and Appellee, *v.* ALBERT STOB, Cross-Defendant-Appellee and Appellant; ALBERT STOB, Third-Party Plaintiff, *v.* KEVIN SCHARRINGHAUSEN, Third-Party Defendant.)

Second District No. 79-665

Opinion filed November 12, 1980.

108

William J. Nellis and Thomas C. Nyham, both of Coghlan, Joyce & Nellis, of Chicago, for appellant Albert Stob.

Stephen M. Cooper, of Geneva, for appellee Wes Scharringhausen.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

After a bench trial on the third-party complaint of Wes Scharringhausen (Scharringhausen) against Albert Stob (Stob), the trial court determined, *inter alia*, that Scharringhausen and Stob entered a sharecropping agreement on or about April 1, 1974, and that the preponderance of the evidence supported Scharringhausen's allegation that Stob terminated the agreement without just cause on or about September 4, 1974. The trial court found that the parties were jointly liable for monies due plaintiff Agrinetics, Inc., and that Scharringhausen proved causes of action against Stob based upon both breach of contract and conversion. In its order, the trial court found that the measure of damages for both conversion and breach of contract theories is the value of the hogs, grain and supplies on hand at the time of the breach or conversion, and that that rule is applied to growing but immature crops by considering various factors which he then enumerated in paragraph 18 of his judgment order. Thereafter, the court granted Scharringhausen a judgment for $36,755.14, that amount being computed and itemized in the body of the judgment order.

Third-party defendant Stob appeals the finding that there existed a sharecropping agreement between himself and Scharringhausen, contending that such a finding was (1) error as a matter of law and (2) contrary to the manifest weight of the evidence. He also appeals the award of damages, submitting that the trial judge erred in determining and applying the proper measure of damages. Third-party plaintiff Scharringhausen cross-appeals the damages award as well.

As regards the first issue on this appeal, Stob contends that the court's finding that Wes Scharringhausen and Stob entered into a sharecropping agreement on or about April 1, 1974, is error as a matter of law because the term of the prior tenant farmer, Kevin Scharringhausen, could not, under several legal theories, end at that time.

██ We neither consider nor set forth these legal theories since Stob did not raise them before the trial court. The theories upon which a case is tried in the lower court cannot be changed on review and may not be raised for the first time on appeal. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147.

Regarding Stob's second issue, after a careful examination of the record, we conclude that, while there are some discrepancies in the testimony of the witnesses particularly with reference to dates, the trial judge, as the trier of fact, is in a superior position to determine the credibility of witnesses, and where his factual findings are not against the manifest weight of the evidence, they must be accepted by this court. (See *Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 93; *Glass v. Peitchel* (1978), 63 Ill. App. 3d 57, 61; *Schaefer v. Checker Taxi Co.* (1976), 41 Ill. App. 3d 32, 37.) We hold that the trial judge's finding that there existed a sharecrop agreement between Scharringhausen and Stob is not against the manifest weight of the evidence.

The final issue on appeal is whether the trial court erred in determining and applying the proper measure of damages. In assessing damages, the trial court made numerous findings concerning the quantities of various crops and livestock, their respective values and the expenses incurred by the parties in carrying out the sharecrop agreement. From the briefs before us, we determine that this appeal is limited to the question of the proper measure of damages and its application only to the corn and the soybeans. The record discloses that, as to the corn crop, the court determined its value based upon the anticipated, projected yield measured as of the date of the breach of contract and the date of conversion which the court found to be the same. With reference to the soybean crop, the court determined its value based upon an actual yield.

We find the trial court did not err in determining the value of the soybean crop on the basis of its actual yield and actual value, and we affirm the trial court's determination of $6,440.69 as the value of the soybean crop.

 Regarding the corn, the trial court erred in finding that the conversion of the crop occurred upon the breach of the agreement. In order to constitute conversion, the property appropriated, destroyed or withheld must be personal property. (*Prudential Insurance Co. of America v. Thatcher* (1936), 104 Ind. App. 14, 20, 4 N.E.2d 574, 577; *Belcher v. Spohn* (1934), 170 Okla. 139, 141, 39 P.2d 87, 89; 18 Am. Jur. 2d *Conversion* §9 (1965). See *Genslinger v. New Illinois Athletic Club* (1923), 229 Ill. App. 428, 442-49; *Kime v. Dale* (1883), 14 Ill. App. 308, 311.) Since a growing crop is part of the realty (see *Taylor v. Riggins* (1928), 129 Okla. 57, 58, 263 P. 146, 147), it cannot be subject to conversion until it is severed from the realty, *i.e.*, it becomes personal property. (18 Am. Jur. 2d *Conversion*

§22 (1965); see *Olson v. Olson* (1912), 168 Ill. App. 358, 360.) Thus, the corn crop in this case could not have been converted by third-party defendant until it was severed from the land, *i.e.*, until it was harvested, and it is the value of the actual corn crop converted that constitutes the damages.

The case of *Zuidema v. Sanitary District* (1921), 223 Ill. App. 138, relied upon by Scharringhausen, is distinguishable since, in that case, the crops were immature and were destroyed as a direct result of defendant's actions. Where crops are completely or even partially destroyed, a court must necessarily determine damages based upon a projected yield. But where, as in the case before us, the actual harvesting of the corn crop constitutes the conversion, the measure of damages is the market value of the corn at that time and place.

■■ With respect to the corn, the trial court also erred in its consideration of damages flowing from the breach of the sharecropping contract. The rule of damages for breach of contract in cases such as this is set forth in *Stoneking v. Long* (1908), 142 Ill. App. 203, 209:

> "It is well settled that where one party repudiates the contract and refuses [no] longer to be bound by it, the injured party has an election to pursue either of three remedies: he may treat the contract as rescinded, and recover upon a *quantum meruit* so far as he has performed, or he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover under the contract; or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing. *In the latter case the contract would be continued in force for that purpose*." (Emphasis added.)

Scharringhausen contends that he elected to pursue the third alternative suggested in *Stoneking* and therefore he was entitled to the value of the corn crop measured from the date of the breach and based upon the projected yield of the corn, since the crop had not yet been harvested.

■■ An examination of the complaint and a review of the evidence discloses that Scharringhausen, in fact, did not elect the third remedy; rather, as the trial court specifically found, following the breach of contract by Stob on September 4, 1978, Scharringhausen intended to return to the farm and indeed expressed his intent and desire to return and harvest the corn. Thus, Scharringhausen did not treat the repudiation of the contract by Stob as putting an end to the contract for all purposes of performance as required by the third alternative. Rather, the evidence reveals, and the trial court found, that Scharringhausen kept the contract alive, being at all times ready and able to perform, and brought suit after

the crops had been harvested, *i.e.*, at the end of the time for performance. In such a case he is entitled to his share of the actual net profits he would have received under the contract, and the measure of damages is based upon the actual corn yield and its value rather than prospective profits measured at the time of the breach.

We point out, however, that, even under the third alternative of *Stoneking*, the measure of damages in a case such as this, where suit is brought after the crop has been harvested, is the measure of plaintiff's share of the profits determined by the actual yield and actual market value of the crop less expenses rather than the prospective value. While the third alternative under *Stoneking* puts the contract at an end for all purposes of performance, for the purpose of determining profits, it is continued in force. Evidence concerning prospective profits should be considered only where the crops have been destroyed prior to harvesting or where, at the time of trial, the crops have not as yet been harvested.

Since, under the facts of this case, the trial court was limited to the determination of actual value, it erred in applying the factors set forth in paragraph 18 of its order, which factors apply only when projected value need be determined. For the same reason, the trial court erred in its findings regarding the value of the corn crop in paragraphs 19 through 26 of the judgment order.

Also regarding the damages to which Scharringhausen is entitled for breach of contract, we note that, since he is entitled to his one-half interest in the profits which flow from the contract, the court should, in determining Scharringhausen's share of the profits arising from the corn crop, take into consideration the $8,200 disaster payment which Stob received from the government as compensation for the corn damaged by the early frost.

We reverse that part of the judgment order of August 3, 1979, awarding Wes Scharringhausen the sum of $36,755.14, and remand the cause to the trial court for a hearing limited to evidence on the market value of the corn crop as harvested less expenses of harvesting and marketing. After a determination of such amount, the court shall add thereto the sum of $8,200, the amount of the disaster payment received by Stob for the damaged corn, and such amount shall constitute the value to the parties of the corn crop.

The court shall then recalculate the damages to be awarded Scharringhausen on the basis of its new finding and shall otherwise utilize the values and expenses previously determined in the judgment order of August 3, 1979.

Affirmed in part, reversed in part.

NASH and WOODWARD, JJ., concur.