KAISER AGRICULTURAL CHEMICALS, Plaintiff-Counterdefendant-Appellant and Cross-Appellee, v. DAVID RICE, JR., Defendant-Counterplaintiff-Appellee and Cross-Appellant.

Fourth District   No. 4—85—0161

Opinion filed December 4, 1985.

Kirtley E. Wilson, of Monroe, Wilson, Dyar, McDonald & Moss, of Decatur, for appellant.

Dale A. Cini, of Ryan, Grabb, Cini & Bennett, of Mattoon, for appellee.

JUSTICE MORTHLAND delivered the opinion of the court:

The plaintiff filed an action in the circuit court of Champaign County to recover the balance due, plus service charges, for herbicides provided for and applied to defendant's farmlands by the plaintiff. The defendant denied the allegations in the complaint and filed a counterclaim contending the plaintiff negligently mixed and applied the chemicals to defendant's land prior to planting, which resulted in damaged crops and reduced yield. The plaintiff's answer to the counterclaim denied all allegations with respect to negligence. The defendant was subsequently given leave to file an affirmative defense based upon breach of warranty. The plaintiff denied the allegations in the affirmative defense. In this posture, the case was presented to a jury for resolution.

The plaintiff's proof at trial showed that the balance due the plaintiff was $17,115.37. In addition, the plaintiff claimed finance charges of 21% per annum, as set forth in its billing statement forwarded to defendant. The testimony at trial showed that plaintiff, through two employees, Darvin Winnings and Dennis Butler, sold chemicals to defendant for his three fields. The defendant was to prepare the fields and advise the plaintiff when the fields were ready for spreading. Winnings and Butler were involved in the selling, mixing, delivery and spreading of the chemicals, and used plaintiff's equipment for those purposes. Defendant used his own equipment for incorporation of the chemicals into the soil.

When the herbicides were mixed, no chemical test was performed to determine if a proper mix had been achieved. Rather, plaintiff's employees conducted a visual examination and observed what was described as the proper milky-white color.

The herbicides were applied to defendant's three fields. Subsequently, the defendant had weed problems with one of those fields, a 155-acre tract. Charles Meeker, who lived on the property, stated that the soil was favorable and fairly smooth at the time the chemicals were applied to this tract. John Wickert, a foreman for DeKalb-Pfizer Genetics, for whom the defendant raised seek corn, testified that the field was not cloddy and had a good seed bed. Winnings, testifying for plaintiff, described the fields as "dry, rough and cloddy."

Winnings further testified that the vehicle used to apply the herbicides to the defendant's farm contained a dial to adjust the rate of flow of the herbicides being applied. He could not recall where the dial was set when applying the herbicides to the 155-acre tract. The vehicle had a spray boom with six nozzles; the nozzles were 10 feet apart on the boom.

John Jennings, sales representative for Shell Chemical, testified that he inspected the field in mid-June of 1982. He felt that the implement the defendant used for incorporation was not satisfactory, and was operated at a slower speed than recommended. Jennings thought that the implement needed to be equipped with shovels rather than points. He testified that the herbicides applied to the field need not be incorporated to function, but if incorporated, it must be done properly. Jennings' opinion was that a substantial cause of the poor weed control was application of the herbicides to a cloddy field. He testified that if a herbicide is attached to a large clod or just the soil surface, then it will remain on the surface. There must be adequate rainfall to enable the herbicide to enter the weeds and grass.

Robert Waelde, an agronomist and district manager for plaintiff, testified he believed that when defendant cultivated the soil it was a little wet, which may have resulted in clods.

Agronomist William Conterio inspected the field. He observed that where the weed control stopped on the field, it stopped in straight lines. He expressed his opinion that the herbicide was not properly applied. He further testified that the parent chemical of Bladex, one of the herbicides used, is an insoluble; as such, it must be ground into a fine powder and suspended in a liquid base. Conterio testified that if the suspension breaks, the chemical will sink. He gave his opinion that the suspension broke in this case. This, he suggested, would explain the bare spots showing a high concentration of herbicide, as well as the spots where there was little or no weed control, indicating a weak mixture of the herbicide. The existence of areas that remained clean in 1983 were an indication of application in excess of that needed in 1982. He testified that 1982 was an excellent

year for farmers in Douglas County.

Marion Bateman, agricultural advisor for Douglas County, observed defendant's problem field on two occasions. He noted that the two or three rows next to the ditch were weedy, while the first 200 to 240 feet were extremely clean. He described the weed control in the remainder of the field as very sporadic. Batemen stated that 1982 was the best corn production year for farmers in Douglas County. He further testified that poor weed control had adversely affected production in the defendant's field.

The defendant testified that approximately one-half of the field was planted with Variety 60-60 seed corn, and the other half with an experimental variety called 29030. The Variety 60-60 yielded 53 bushels per acre, and the 29030 yielded 44 bushels per acre. Defendant testified that the yield should have been at least 80 bushels per acre for the female seed corn and 70 bushels per acre for the male corn. He estimated that he lost 4,824 bushels of female seed corn worth $18,900, and 1,200 bushels of male seed corn worth $2,790.

Darrell Stenger, who lives on a farm one mile west of Tuscola, testified that he planted 60-60 variety seed corn, and that he grew 84 to 86 bushels per acre. He went upon defendant's 155-acre tract in June of 1982 and observed the weeds. Stenger noticed that when there was a clean spot on the field, it was approximately 60 feet wide, or about the width of a spray boom.

At the close of all the evidence, the plaintiff moved to strike defendant's affirmative defense. The court granted the motion. The plaintiff also moved for a directed verdict on the complaint. The court granted the motion and directed a verdict for the plaintiff. The defendant moved to strike the claim of plaintiff for interest as stated in plaintiff's statement of account, and the court granted that motion. The defendant further moved to strike any claim by the plaintiff for interest. The trial court found that the principal amount of indebtedness was $17,115.37, and entered judgment in favor of the plaintiff and against the defendant in that amount. The court further found that of the total principal amount, the sum of $13,192.54 should not have been in dispute, and awarded statutory prejudgment interest of 5% per year on that amount. The court held that there was a legitimate dispute as to the remaining principal amount of $3,922.83, and refused to award prejudgment interest on that figure. The total judgment, plus interest, in favor of the plaintiff and against the defendant was set at $18,654.51.

The jury was instructed concerning the issues formed by the defendant's counterclaim and that plaintiff's answer to the counter-

claim, and arguments were made by counsel on these issues. The jury returned a verdict finding for the defendant on the counterclaim, and assessed defendant's total damages at $21,690. The jury further found that the defendant was 10% contributorily negligent and reduced his recoverable damages to $19,521. Thus, taking into account the plaintiff's award under the complaint, the defendant's net recovery amounted to about $866.49. The plaintiff appeals contending that: (1) The trial court erred by not including interest at an annual percentage rate of 21% on the full principal amount; (2) the trial court erred in submitting the negligence claim to the jury, for it sought recovery for economic loss alone, and as such was barred by *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill 2d 69, 435 N.E.2d 443; (3) there was no proof that plaintiff was negligent; and (4) the trial court erred in allowing the defendant to testify with respect to damages.

The defendant filed a cross-appeal, contending that: (1) The trial court erred in directing a verdict for the plaintiff on the complaint and answer; and (2) prejudgment interest should not have been awarded.

■ Plaintiff points to its billing statement, which contains the following language in small print at the bottom-left corner of the statement:

> "FINANCE CHARGE is computed by a 'Periodic Rate' of .75% per month, which is an ANNUAL PERCENTAGE RATE of 21 applied to that portion of the 'Previous Balance' which remains unpaid by the second succeeding statement from the date of purchase."

Plaintiff contends that this statement is an agreement between the parties, and that defendant impliedly accepted the 21% rate under the so-called merchant's exception of the Uniform Commercial Code, section 2—201(2) (Ill. Rev. Stat. 1983, ch. 26, par. 2—201(2)). This statute, however, merely serves to remove a claim from the Statute of Frauds and does not establish the terms of an oral contract. (*Hodgman, Inc. v. Feld* (1983), 113 Ill. App. 3d 423, 447 N.E.2d 450). There is no evidence in the record that defendant agreed to pay plaintiff 21% interest. The plaintiff also cites section 4 of "An Act in relation to the rate of interest ***" (Act) (Ill. Rev. Stat. 1983, ch. 17, par. 6404(c)) for the proposition that it is lawful to charge, contract for, and secure any rate of interest with regard to any business-loan agreement. We fail to see the applicability of this latter statute because we conclude that no loan was contemplated, and no agreement was made as to an interest rate.

■■ ■ The defendant, on the other hand, argues that the trial court erred in awarding any prejudgment interest at all. Section 2 of the Act (Ill. Rev. Stat. 1983, ch. 17, par. 6402) provides in part as follows:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment."

Defendant asserts that the amount due plaintiff for herbicides and services allocated to the field in question was neither fixed nor ascertainable until after trial commenced, and accordingly, no recovery for prejudgment interest could be allowed. The evidence is undisputed that the defendant had no complaint with either the herbicides provided or the method of spreading them on two of his three fields. His only grievance was with the mixing and application to the 155-acre tract which is the subject of this proceeding. The trial judge has discretion to award or deny interest as an element of recoverable damages, and interest will be allowed where such damages are liquidated or where they can be ascertained by simple and certain computation. (*Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 431 N.E.2d 738.) Here, prior to trial, the cost of material and labor expended on the two tracts not subject to this litigation was not separately stated. The defendant did have a valid complaint with reference to at least a portion of the account as stated, and he is not required to speculate as to that portion. We therefore hold that there was not sufficient basis upon which the trial court could award prejudgment interest. We therefore vacate that portion of the judgment in favor of the plaintiff in excess of $17,115.37.

■ Plaintiff also contends that it was error for the defendant to recover damages in tort for an economic loss, and cites *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443. While this is unquestionably the holding in *Moorman*, it provides little comfort to the plaintiff in this case. An examination of the record shows that plaintiff never raised the *Moorman* question in the trial court. On the other hand, it tendered numerous jury instructions under the issues formed by the defendant's amended counterclaim and plaintiff's answer thereto, including one on ordinary care,

negligence, and one on comparative negligence. Plaintiff had no objection to defendant's instructions submitted on contributory negligence, proximate cause, damages and issues. The post-trial motion filed by plaintiff did not mention the *Moorman* ruling. A party may not raise on appeal defenses not interposed in its answer before the trial court (*Mendelson v. Lillard* (1980), 83 Ill. App. 3d 1088, 404 N.E.2d 964), even where it appears that the evidence presented could have supported that defense. (*Consoer, Townsend & Associates v. Addis* (1962), 37 Ill. App. 2d 105, 185 N.E.2d 97.) Issues raised for the first time on appeal normally may not be considered by an appellate court. *Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299, 443 N.E.2d 575.

In *Zukas v. Appelton Manufacturing Co.* (1916), 200 Ill. App. 403, a plaintiff-employee brought an action against his employer when plaintiff's action had clearly been abolished by the Workmen's Compensation Act. The employer first argued this point in the appellate court, and the court stated:

"The trial court had jurisdiction of the parties and of a common-law action on the case to recover damages for personal injury. Under the pleadings and the evidence there could properly be no recovery in this case had the defense here first suggested been made in the trial court. Where a defense is denied by a reviewing court because not presented in the court below, the plaintiff is permitted to recover where he perhaps, or certainly, was not entitled to recover had the defense been there made. We conclude that appellant cannot be heard now to complain that the case was tried under the wrong theory of the law *** ." 200 Ill. App. 403, 408.

The plaintiff here is bound both by its action and its inaction, and the trial court simply cannot err on an issue which was not presented to it for decision.

■ Plaintiff's next contention is that there was no proof of negligence. The evidence shows that the herbicides applied to defendant's farm were supplied, mixed, transported, and applied by plaintiff or its employees, and that all of the foregoing was the responsibility of the plaintiff. No chemical tests were made by plaintiff's employees to determine if the proper mixture had been achieved before application. Witnesses testified to observing good weed control in a straight line for 50 to 100 to 200 feet. When weed control stopped, it did so in a line, as if a sprayer had been turned off. The expert witness, Conterio, gave his opinion that the herbicide was not properly applied. The jury could certainly have arrived at that conclusion based upon all of the evidence in the record. The plaintiff's duty was to properly apply

the herbicide, and a failure to fulfill that duty is negligence. The defendant met his burden of proof in this respect under his counterclaim.

■ Plaintiff's final contention is that defendant failed to prove damages. The rule as to setting damages for completely or partially destroyed crops has been stated thus: "[A] court must necessarily determine damages based upon a projected yield." (*Agrinetics, Inc. v. Stob* (1980), 90 Ill. App. 3d 107, 110, 412 N.E.2d 714, 717.) Probable yield of the crop if no damage had occurred may be calculated by considering the average yield in the area under similar circumstances. (*Johnson v. Sleaford* (1963), 39 Ill. App. 2d 228, 188 N.E.2d 230.) While the defendant presented evidence of corn yield per acre on a similar tract in that year for the 60-60 variety, he did not present such evidence with respect to the 29030 variety. There apparently was no such evidence to present with respect to this latter variety of seed corn, as no one else in the area had grown it that year.

■ The defendant himself testified concerning his farming experience. He stated he had farmed in the area since 1947. He gave his opinion that the female seed corn would have produced 80 bushels per acre and the male seed corn 70 bushels per acre. The defendant calculated his loss on the basis of those approximations. The defendant, under the evidence, was qualified to express his opinion as to the probable yield. 20 Am. Jur. Proof of Facts 2d, sec. 14, at 157-58 (1979) reads:

> "After being qualified as to his farming experience and his experience with the particular crops in question, the grower may also testify as to such matters of opinion as to whether the growing season was a good one for such crops, the probable amount of production in the absence of the injury, the value of the probable yield, and the amount of his savings in expenses as a result of the injury. *** The mere fact that the grower's opinion as to the value of the destroyed crops is in the nature of an estimate and approximation does not, by itself, make the testimony inadmissible or insufficient as proof of the amount of damage."

We also note the language in *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 147-48, 281 N.E.2d 323, 325, quoting with approval the language in *Barnett v. Caldwell Furniture Co.* (1917), 277 Ill. 286, 289, 115 N.E. 389, 390:

> " 'It is perhaps true that absolute certainty as to the amount of loss or damage in such cases is unattainable, but that is not required to justify a recovery. All the law requires is that it be

approximated by competent proof. That proof of the exact amount of loss is impossible will not justify refusing compensation. If that were the law, contracts of the kind here involved could be violated with impunity. All the law requires in cases of this character is that the evidence shall with a fair degree of probability tend to establish a basis for the assessment of damages.' "

The defendant here was qualified by reason of his farming experience and ownership to testify with reference to his damages. The fact that he had no comparable yield figures from other farmers concerning the 29030 variety yield for the year would go to the weight that the jury might accord this portion of his testimony, but not to its admissibility. See *People v. Guido* (1926), 321 Ill. 397, 152 N.E. 149.

■ The defendant contends in his briefs to this court that the trial court erred in striking his affirmative defense. We note that the defendant did not specify this as error in his post-trial motion, nor did he raise this as an issue in his notice of appeal. He has therefore waived the purported error. *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 1062, 467 N.E.2d 1153, 1155.

■ Finally, the defendant contends that the trial court erred in directing a verdict for plaintiff on plaintiff's complaint. Under the standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, the trial court must construe the evidence most strongly in favor of the party against whom the motion for a directed verdict is granted. If reasonable minds could differ, or if there is evidence to support the opposing party, the motion should be denied. Here, the plaintiff was to supply both the product and the labor to apply that product to the land. There is no question but that this was done. The fact that the defendant by counterclaim charged negligent application does not detract from the conclusion that the product was supplied and the application made. We find no error by the trial court in directing a verdict for the plaintiff.

The judgment of the circuit court of Champaign County is affirmed except that the judgment on the complaint in favor of the plaintiff and against the defendant is reduced to the sum of $17,115.37 and the cause is in all other respects affirmed.

Affirmed as modified.

McCULLOUGH and TRAPP, JJ., concur.