**ROSS–BERGER COMPANIES, INC.,**
Successor in Interest to Berger
Realty Group, Inc., Plaintiff–Appellee,

v.

The **EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES,** Defendant–Appellant.

No. 88–2010.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 29, 1988.

Decided April 25, 1989.

Rehearing and Rehearing En Banc
Denied June 8, 1989.

1332

John D. Lien, Foley & Lardner, Chicago, Ill., for defendant-appellant.

Mitchell S. Goldgehn, Greenberg Keele Lunn & Aronberg, Chicago, Ill., for plaintiff-appellee.

Before POSNER, COFFEY, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The Ross–Berger Companies, Inc. (Ross–Berger) instituted this diversity action against The Equitable Life Assurance Society of the United States (Equitable) in order to recover a broker's commission that it earned by procuring a tenant for a building owned by Equitable. After concluding that the doctrine of collateral estoppel precluded Equitable from relitigating two issues relevant to Ross–Berger's claim, the district court granted Ross–Berger's summary judgment motion and awarded Ross–Berger prejudgment interest pursuant to the Illinois prejudgment interest statute. We affirm the judgment of the district court and order Equitable to submit a statement as to why attorney's fees reasonably incurred in this appeal ought not be awarded to Ross–Berger.

## I.

### Background

A. *Facts*

At the time when the events giving rise to this suit took place, Equitable was the owner of an office building in Chicago. Tishman Midwest Management Corp. (Tishman), a leasing and management agent, handled leases in the building for Equitable. In December 1981, Combined Network, Inc. (Combined) retained Berger Realty Group, Inc. (Ross–Berger's predecessor in interest) in order to procure new office space for Combined. Berger employees met with Tishman in mid-December in order to discuss the possibility of Combined's entering a ten-year lease in Equitable's building, and, on December 16, 1981, a Berger agent wrote to Tishman in order to confirm that Berger had procured Combined as a prospective tenant and to inform Tishman that Berger expected to be paid a broker's commission if Combined entered into a lease. By early January 1982, discussions over lease terms between Combined and Tishman had begun. Later that month, Tishman sent Combined a draft lease. On February 5, 1982, Combined signed the lease and paid rent for the first month of the lease term. At that time, Tishman reminded Combined that the formal approval of Equitable was still required, and advised Combined's general counsel, Melvyn Goodman, that he would receive a call from Tishman when the lease had been approved. Mr. Goodman claimed that Tishman told him on February 10 or 11, 1982, that Equitable had signed the lease. In fact, Equitable had not signed the lease. In early March, Equitable decided not to approve the lease agreement and returned Combined's rent check.

Combined then sued Equitable for breach of the lease agreement. Combined maintained that a valid lease existed between itself and Equitable. It submitted that Tishman was Equitable's agent, that Tishman had falsely represented that Equitable had signed the lease, and that Equitable therefore was equitably estopped from raising the Statute of Frauds as a defense to Combined's enforcement of the lease agreement. A jury found Equitable liable for breach of the lease agreement and awarded Combined substantial damages. On appeal, this court affirmed the jury's liability finding but remanded the case for a new trial for the limited purpose of recalculating Combined's rental damages. *See Combined Network, Inc. v. Equitable Life Assurance Soc'y*, 805 F.2d 1292 (7th Cir. 1986). In affirming the jury's liability finding, this court noted that the Statute of Frauds "bars the enforcement of a contract but does not affect its validity," *id.* at 1295, and we explicitly held that Tishman was Equitable's agent with the authority to represent that Equitable had executed the lease. We also noted that Equitable, as principal, was bound by representations made by its agent, Tishman. *Id.* at 1296–97. Because Equitable was bound by Tishman's representation that the lease had

been signed and was thus equitably estopped from raising the Statute of Frauds defense, Combined was entitled to recover for the breach of its binding oral agreement with Equitable. *Id.* at 1298.

After we affirmed the jury's determination that a binding lease agreement did exist between Equitable and Combined, Ross–Berger filed this action to recover the broker's commission that it earned by procuring Combined as a tenant for Equitable's office building.

### B. *District Court Proceedings*

On September 29, 1987, Ross–Berger filed a summary judgment motion on its claim for its broker's commission. This motion was referred to a magistrate by the district court. In its motion, Ross–Berger argued that the doctrine of collateral estoppel precluded Equitable from relitigating two issues that had already been decided against it in the earlier *Combined Network* litigation: (1) that Tishman was Equitable's agent; and (2) that a valid lease agreement existed between Combined and Equitable. Equitable advanced four arguments against giving collateral estoppel effect to the *Combined Network* litigation. In a thorough Report and Recommendation, the magistrate rejected each of these arguments.

Equitable first claimed that Ross–Berger could not invoke the collateral estoppel doctrine in this case because *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), established a "mandatory rule" that, if a plaintiff in a second action could have joined in an earlier action, that plaintiff is absolutely barred from using the earlier action offensively. The magistrate held that "[n]o such rule exists." R.47 at 7. The magistrate relied on the Supreme Court's holding that "trial courts [have] broad discretion to determine when [collateral estoppel] should be applied." *Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. at 651. Therefore, she concluded that the court's "discretion should be exercised here to preclude Equitable from relitigating issues it has already fully litigated and lost." R.47 at 8.

Equitable next argued that the *Combined Network* litigation should not be given collateral estoppel effect because the judgment in that case was infected by jury prejudice. Equitable asserted that the *Combined Network* jury was inflamed against " 'one of the largest financial institutions in the United States' (Equitable) in a suit brought by a 'new, small Chicago based company' (Combined Network)," *see* R.47 at 9, and that this problem was somehow illustrated by this court's partial reversal of the district court's judgment in *Combined Network.* However, the magistrate explained that this court only reversed the jury's damages calculation—leaving the jury's liability finding undisturbed. In addition, Equitable presented no evidence of jury prejudice. The magistrate noted that this objection "barely merit[ed] comment," R.47 at 8, and rejected it.

Equitable's third objection challenged the standard of proof that this court employed in its equitable estoppel analysis in *Combined Network.* There, we noted that Illinois courts had not clearly established the burden of proof required in equitable estoppel cases and held that the district court had properly applied the preponderance of the evidence standard. 805 F.2d at 1297. Equitable, however, asserted that a more recent Illinois case, *Farmers & Merchants Bank v. Davis*, 151 Ill.App.3d 929, 104 Ill. Dec. 850, 503 N.E.2d 565 (1987), changed the law in Illinois and applied a clear and convincing evidence standard in an equitable estoppel case. This argument was rejected by the magistrate, on the ground that *Farmers & Merchants* used the same standard of proof language as that used in the cases relied upon by this court in concluding that the preponderance of the evidence standard should be applied. Thus the Illinois position on the issue was unchanged.

Equitable's final objection to giving the *Combined Network* litigation collateral estoppel effect was based on the reliance on equitable estoppel in that case. Equitable argued that, since Ross–Berger itself could not have raised equitable estoppel as a bar to Equitable's Statute of Frauds defense,

Ross–Berger cannot now take advantage of the preclusive effect of the earlier judgment. The magistrate rejected this argument, since it misconstrued the role equitable estoppel played in the *Combined Network* litigation. As this court explained in *Combined Network*, the Statute of Frauds (and equitable estoppel) is only relevant to the enforceability of the lease, not its validity. 805 F.2d at 1295. In order to recover its broker's commission, Ross–Berger need only show that a valid lease existed; it need not have been able to enforce it itself. The issue of the validity of the lease was resolved against Equitable in *Combined Network*, and the magistrate therefore concluded that Equitable was precluded from relitigating that issue in this case.

■ Because Equitable was precluded from relitigating the existence and validity of the lease, the magistrate concluded that Ross–Berger, as the procuring broker for the transaction, was entitled to its broker's commission. No question of material fact remained to be tried.[1] Therefore, the mag-

istrate recommended that Ross–Berger's summary judgment motion be granted.

The district court adopted the Report and Recommendation of the magistrate and entered judgment in favor of Ross–Berger. The court also concluded that Equitable's failure to pay the broker's commission after this court issued its opinion in *Combined Network* was "vexatious and unreasonable" within the meaning of the Illinois prejudgment interest statute, Ill.Rev.Stat. ch. 17, para. 6402, and awarded prejudgment interest to Ross–Berger. *See* R.58 at 1.

## II.

### Discussion

#### A. *Collateral Estoppel*

The district court properly rejected each of the four arguments that Equitable advanced in opposition to Ross–Berger's invocation of the doctrine of collateral estoppel. On appeal, Equitable has not presented any arguments that were not addressed ade-

---

1. Where a real estate broker and a vendor have a brokerage contract, the broker need only establish that he procured a buyer who was ready, willing, and able to proceed with the lease in order to recover its commission. *See United Investors, Inc. v. Tsotsos*, 132 Ill.App.3d 175, 87 Ill.Dec. 439, 441, 477 N.E.2d 40, 42 (1985); *Western Pride Builders, Inc. v. Zicha*, 23 Ill.App. 3d 770, 320 N.E.2d 181, 183–84 (1974); R.47 at 5–7. In this case, Equitable admits that it employed Tishman as its agent and that it authorized Tishman to agree to pay a commission to outside brokers. *See* R.39 at 15 (Equitable's Response to Ross–Berger's Motion for Summary Judgment). Tishman, in turn, admitted that it expected to pay Ross–Berger a commission for procuring Combined as a tenant. *See* R.16, Ex. K–2 at 198 (Ross–Berger's Exhibits in Support of Motion for Summary Judgment). In light of this, the magistrate concluded that Ross–Berger had an "implied agreement" to recover a commission from Equitable. R.47 at 7. Equitable does not contest this conclusion on appeal.

Proof of the existence of a valid lease agreement in the *Combined Network* litigation prevents Equitable from now asserting that a material question of fact exists as to Ross–Berger's procurement of a ready, willing, and able buyer. " 'The true rule is, that the broker is entitled to his commissions, if the purchaser presented by him and the vendor, his employer, enter into a valid, binding and enforceable contract.' " *Tsotsos*, 87 Ill.Dec. at 441, 477 N.E.2d at 42 (quoting

*Wilson v. Mason*, 158 Ill. 304, 42 N.E. 134, 134 (1895)); *see also Tsotsos*, 87 Ill.Dec. at 441, 477 N.E.2d at 42 ("Where a seller of real estate enters into an enforceable contract of sale with a purchaser procured by a broker, the readiness, willingness and ability of the purchaser is no longer open to question and the broker's right to compensation accrues whether or not the sale is completed."); *Zicha*, 320 N.E.2d at 184 ("if the owner approves of or enters into a contract with the purchaser, the readiness, willingness and ability of the latter is no longer open to question"); *cf. John F. Fleming, Inc. v. Beutel*, 395 F.2d 21 (7th Cir.1968):

> Under the law of Illinois, a broker earns his commission when he produces a purchaser ready, willing, and able to buy on terms acceptable to the seller. Once he has done so, *the commission is earned even though* no enforceable contract to purchase is ever formed and *no sale is consummated, if, in fact, the failure to contract or consummate is wholly attributable to the seller.*

395 F.2d at 24 (emphasis supplied); *Bachewicz v. American Nat'l Bank & Trust Co.*, 126 Ill. App.3d 298, 81 Ill.Dec. 294, 308, 466 N.E.2d 1096, 1110 (1984) ("The ultimate consummation of the sale was not essential to [the broker's] right to collect his brokerage commission."). Thus, giving preclusive effect to *Combined Network*'s establishment of the existence of a valid lease entitles Ross–Berger to summary judgment on its claim for a commission.

quately by the magistrate in her Report and Recommendation. We shall discuss each of Equitable's contentions separately.

**1.**

■ On appeal, Equitable first contends that Ross–Berger cannot invoke the doctrine of collateral estoppel to prove the existence of a valid lease since, in the earlier action, Combined had relied upon equitable estoppel, rather than ordinary contract principles, to enforce the lease. Equitable argues that Ross–Berger, a stranger to the lease transaction between Equitable and Combined, did not rely to its detriment on any misrepresentation made by Equitable. Thus, Ross–Berger could not have asserted equitable estoppel in order to prove the existence of a valid and enforceable lease in an independent action against Equitable. *See* Appellant's Br. at 11–12 (discussing *Beathard v. Chicago Football Club, Inc.*, 419 F.Supp. 1133, 1138–39 (N.D.Ill.1976)). Because Ross–Berger itself could not have used equitable estoppel to prove the existence of the lease, Equitable asserts that it cannot rely upon the doctrine of collateral estoppel to prove the existence of the lease. Appellant's Br. at 12. Therefore, Equitable concludes that summary judgment in this case is inappropriate; Ross–Berger must prove an issue not decided in the earlier *Combined Network* litigation—did Ross–Berger provide Equitable with a ready, willing, and able tenant? *See* note 1, *supra*.

As the magistrate aptly noted in her Report and Recommendation, Equitable's argument "misconstrues the role of equitable estoppel in the earlier litigation." R.47 at 10. Equitable estoppel was used in the *Combined Network* litigation only to allow Combined to enforce its lease agreement with Equitable in spite of Equitable's Statute of Frauds defense. The existence of a valid lease agreement between Equitable and Combined (and, thus, Combined's readiness, willingness, and ability to enter into the lease, *see* note 1, *supra*) was established not through the assertion of an equitable estoppel, but through the operation of the agency law precept that a principal is bound by contracts entered into

by its agent, if the agent has actual or apparent authority to contract. *See Combined Network*, 805 F.2d at 1295–96. Equitable's agent, Tishman, represented to Combined that the lease contract had been signed. *Id.* at 1296. During the *Combined Network* litigation, Equitable failed to object to a jury instruction informing the jury that "Tishman was Equitable's agent, and that any act or omission of Tishman was the act or omission of Equitable." *Id.* at 1296. In addition, as we noted in the earlier litigation, the facts of the case supported the conclusion that Tishman was Equitable's agent and possessed apparent authority to make representations on behalf of Equitable. *Id.* We also noted that, "[o]nce an agent has either actual or apparent authority to act for a principal, the principal is bound by those acts." *Id.* at 1296–97. These principles, not the doctrine of equitable estoppel, led to the conclusion that a valid lease existed between Combined and Equitable. Equitable estoppel was only used to avoid the Statute of Frauds bar to the enforcement of a valid contract. *See also id.* at 1295. ("The Statute of Frauds bars the enforcement of a contract *but does not affect its validity*.") (emphasis supplied) (citation omitted).

In short, because Ross–Berger's inability to use equitable estoppel to enforce the lease itself is irrelevant to the issue of the existence and validity of the lease agreement, nothing prevents Ross–Berger from using collateral estoppel to preclude Equitable from relitigating that issue in this case. The important point is that the validity of the lease was a necessary issue in the earlier litigation, that it was fully litigated, and that it was decided against Equitable. The jury instructions in *Combined Network* clearly show that the issue of the existence and validity of the lease agreement was squarely presented and decided in that case and that it was an issue whose resolution was necessary to the judgment. The jury was instructed that, in order to return a verdict in favor of Combined, it had to find "that Combined and Equitable entered into a contract for Combined to lease the premises from Equitable on the

terms and conditions claimed by Combined." R.47 at 4. The jury returned a verdict in favor of Combined, and that finding of liability was upheld on appeal. Thus, it is clear that a valid contract was found to exist in the earlier suit. Because the same issue is presented in this suit and the party against whom collateral estoppel is being asserted (Equitable) was a party in the earlier action, the application of collateral estoppel in this case to prevent relitigation of the issue is appropriate. *See County of Cook v. Midcon Corp.*, 773 F.2d 892, 898 (7th Cir.1985) (detailing the prerequisites to the application of collateral estoppel).

### 2.

 Equitable insists that the district court's application of offensive collateral estoppel in this case contravenes what it characterizes as *Parklane Hosiery*'s "mandatory rule" precluding the use of offensive collateral estoppel where the plaintiff could easily have joined the earlier action. *See* Appellant's Br. at 16. However, while *Parklane Hosiery* does establish the "general rule" noted by Equitable, 439 U.S. at 331, 99 S.Ct. at 651, that opinion makes it clear that trial courts are to have "broad discretion to determine when [collateral estoppel] should be applied." *Id.* (footnote omitted). Given the wide discretion vested in the trial court, its decision to apply the doctrine of offensive collateral estoppel is reviewed under an abuse of discretion standard. *See Jack Faucett Assocs. v. American Tel. & Tel. Co.*, 744 F.2d 118, 126 (D.C.Cir.1984), *cert. denied*, 469

U.S. 1196, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985); *Collins v. Seaboard Coastline R.R.*, 681 F.2d 1333, 1335 (11th Cir.1982); *see also Ray v. Indiana & Michigan Elec. Co.*, 758 F.2d 1148, 1151 (7th Cir.1985) (per curiam) (trial judge "did not abuse his discretion" in refusing to apply offensive collateral estoppel); *Hauser v. Krupp Steel Producers, Inc.*, 761 F.2d 204, 207 (5th Cir.1985) (same).

The district court did not abuse its discretion in this case. The record certainly does not suggest that Ross–Berger's failure to participate in the *Combined Network* litigation evidences an impermissible "wait and see" attitude. The *Combined Network* litigation involved a claim for breach of a lease agreement, while Ross–Berger asserts a distinct claim seeking to recover a broker's commission. In addition, the *Combined Network* litigation was relatively complicated even without the intervention of Ross–Berger: Combined asserted a counterclaim against Equitable until shortly before trial; the *Combined Network* litigation turned on "the complex interrelationship between the Statute of Frauds and the doctrine of equitable estoppel," Appellee's Br. at 20; and the earlier litigation involved complex damages issues that were wholly unrelated to Ross–Berger's claim. Under these circumstances, Ross–Berger's failure to participate in the earlier *Combined Network* litigation does not show that it had adopted a "wait and see" attitude "for the obvious purpose of eluding the binding force of an initial resolution of a simple issue." *Starker v. United States*, 602 F.2d 1341, 1349–50 (9th Cir.1979).[2]

---

**2.** Where a plaintiff has not needlessly increased the total amount of litigation by adopting a "wait and see" attitude, the concern for judicial economy animating the *Parklane Hosiery* "easy joinder" limitation has not been implicated. *See McLendon v. Continental Group, Inc.*, 660 F.Supp. 1553, 1564 (D.N.J.1987); *see also Nations v. Sun Oil Co. (Delaware)*, 695 F.2d 933, 938 (5th Cir.) (plaintiff in second action had not "sand-bagged" defendant by failing to join earlier action where there was no proof of "purposeful delay" and the failure to join was not "fundamentally unfair" to the defendant) ("Sun Oil had a full, fair and complete opportunity to litigate the negligence issue [during the first action]. They have no right to a second bite at the apple."), *cert. denied*, 464 U.S. 893, 104 S.Ct. 239,

78 L.Ed.2d 229 (1983); *Hauser v. Krupp Steel Producers, Inc.*, 761 F.2d 204, 207 (5th Cir.1985) (district court concluded plaintiff had adopted a "wait and see" attitude where she "failed to present a valid reason" for not joining earlier action); *Louviere v. Shell Oil Co.*, 588 F.Supp. 95, 98 (E.D.La.1984); Restatement (Second) of Judgments § 29(3), reporter's note to comment e (1980) ("A claimant who simply stayed out of a prior action between others ... may ordinarily invoke the benefits of a judgment where the prior action otherwise fulfills the criteria for preclusion."); *cf. General Dynamics Corp. v. American Tel. & Tel. Co.*, 650 F.Supp. 1274, 1282 n. 2 (N.D.Ill.1986) ("This court ... finds that, although General Dynamics and the other af-

Furthermore, we note that the offensive use of collateral estoppel in this case is in no way unfair to Equitable. The Supreme Court in *Parklane Hosiery* identified three contexts where the offensive use of collateral estoppel could be unfair to a defendant: (1) where the defendant had little incentive to vigorously defend the first action; (2) where the judgment relied upon as a basis for the estoppel is itself inconsistent with a prior judgment in favor of the defendant; and (3) where the second action gives the defendant procedural opportunities unavailable in the first action that could readily cause a different result. 439 U.S. at 330–31, 99 S.Ct. at 652–53. A substantial amount of money was at stake in the *Combined Network* litigation. Thus, Equitable had every incentive to litigate the earlier lawsuit fully and vigorously.[3] In addition, the *Combined Network* judgment is not inconsistent with any prior judgment in favor of Equitable, and the second action did not present Equitable with any procedural opportunities that were unavailable to it in the first action. Under these circumstances, the district court clearly did not abuse its discretion in applying offensive collateral estoppel to preclude Equitable from relitigating the agency and lease issues decided in the *Combined Network* litigation.

### 3.

■ Equitable's contention that the *Combined Network* litigation should not have been given collateral estoppel effect because the judgment in that case was infected by jury prejudice is wholly without merit. Equitable has presented absolutely no evidence of jury prejudice in support of its assertion. Equitable relies solely on the fact that we vacated the *Combined Network* jury's damages award because it was "clearly excessive." 805 F.2d at 1300. However, if we had thought that the jury's miscalculation of damages in *Combined Network* was evidence that the jury had been so inflamed against "one of the largest financial institutions in the United States," *see* Appellant's Br. at 17–18, that its liability finding was unreliable, we would not have upheld the jury's liability finding. The district court properly rejected this argument.

### 4.

■ Equitable's fourth contention is also meritless. Equitable maintains that the application of collateral estoppel is inappropriate in this case since the district court in *Combined Network* improperly instructed the jury that the elements of equitable estoppel must be proved by a preponderance of the evidence. Equitable asserts that subsequent case law has established that equitable estoppel must be proved by clear and convincing evidence. This contention, however, is wholly irrelevant to the application of collateral estoppel in this case. As noted earlier, the primary issue that Ross–Berger seeks to prevent Equitable from relitigating—the existence and validity of a lease agreement between Equitable and Combined—was not established through the use of equitable estoppel in the earlier litigation. *See* Part II.A.1 *supra.* Thus, any error in the court's instruction on the equitable estoppel issue in the prior

---

fected manufacturers may have been able to technically effect joinder in *Litton* [the prior litigation], such joinder could not have occurred with "ease." *See Starker v. United States,* 602 F.2d 1341, 1349–50 (9th Cir.1979). The court will therefore not deny estoppel on the basis that General Dynamics might have joined as a plaintiff in *Litton.*").

**3.** In remanding the damage award in *Combined Network,* we suggested that "the range of damages should have been approximately between $30,000 to $40,000." 805 F.2d at 1300. Such a stake provides an adequate incentive to litigate vigorously. *See Starker,* 602 F.2d at 1349 ("The government had plenty of incentive to litigate

*Starker I,* in which a $37,342 refund was at stake."); *see also* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4465 at 598 (1981) (courts respond to the fear of binding parties that had engaged in "half-hearted litigation of ... apparently trivial claim[s]" by "inquiring whether the stakes in the first action were sufficient to provide an incentive to litigate vigorously"). The foreseeability of Ross–Berger's subsequent action to recover its brokerage commission, *see* note 1, *supra,* also provided Equitable with an incentive to litigate the *Combined Network* lawsuit fully and vigorously. *Cf. Parklane Hosiery,* 439 U.S. at 332, 99 S.Ct. at 652.

litigation is irrelevant to our resolution of the collateral estoppel issue currently before us.

## B. *Prejudgment Interest*

The district court found that Equitable's refusal to pay Ross–Berger's broker's commission in the wake of our decision in *Combined Network* constituted a "vexatious and unreasonable" delay in payment and awarded Ross–Berger prejudgment interest from November 12, 1986, the date of our decision in *Combined Network*, under Ill.Ann.Stat. ch. 17, para. 6402.[4] Equitable advances several arguments in support of its contention that statutory prejudgment interest is inappropriate in this case. First, Equitable asserts that any delay in its payment of the broker's commission is not "unreasonable and vexatious" under the statute since Ross–Berger earned its commission in early 1982 but did not make its first "demand for payment" until February 3, 1987—almost five years later. Second, Equitable maintains that its refusal to pay was the result of an "honest dispute as to the existence of a legal obligation" and its presentation of "a tenacious defense." Such conduct, it contends, does not amount to an unreasonable and vexatious delay in payment. Third, Equitable contends that it had a valid reason to delay payment—it had to conduct discovery in order to determine whether Ross–Berger (which is "not the company that originally 'earned the commission,'" Appellant's Br. at 26) had any right to the broker's commission.

Under Illinois law, the decision to award or deny prejudgment interest as an element of recoverable damages is committed to the discretion of the trial judge. *See Singer Co. v. Skil Corp.*, 803 F.2d 336, 341 (7th Cir.1986); *Continental Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc.*, 755 F.2d 87, 94 (7th Cir.1985); *Kaiser Agr. Chemicals v. Rice*, 138 Ill.App.3d 706, 93 Ill.Dec. 316, 321, 486 N.E.2d 417, 422 (1985); *Emmenegger Const. Co. v. King*, 103 Ill.App.3d 423, 59 Ill.Dec. 237, 242–43, 431 N.E.2d 738, 743–44 (1982). Thus, we will not disturb the district court's decision to award prejudgment interest unless that decision constitutes an abuse of discretion. *See Continental Sand & Gravel*, 755 F.2d at 94; *Marvel Eng'g v. Commercial Union Ins. Co.*, 118 Ill.App.3d 844, 74 Ill.Dec. 272, 279–80, 455 N.E.2d 545, 552–53 (1983) (In deciding whether defendant "has been guilty of unreasonable and vexatious delay, the trial court should take the totality of the circumstances into account, and its decision will not be disturbed absent an abuse of discretion."); *see also Pietka v. Chelco Corp.*, 107 Ill.App.3d 544, 63 Ill.Dec. 223, 234, 437 N.E.2d 872, 883 (1982) ("Decisions concerning the award of pre-judgment interest are questions of fact, and their determination will not be disturbed on review unless contrary to the manifest weight of the evidence."). No abuse of discretion has been demonstrated in this case.

Equitable correctly notes that an "honest dispute as to the existence of a legal obligation" will not result in an unreasonable and vexatious delay in payment permitting the recovery of prejudgment interest. *See* Appellant's Br. at 25; *Emmenegger Const. Co.*, 59 Ill.Dec. at 242, 431 N.E.2d at 743. The Appellate Court of Illinois has stated that:

> Neither an honest dispute regarding the existence of a legal obligation nor the defense of a lawsuit can be regarded as unreasonable and vexatious delays of payment. Rather, the claimant must show that his opponent has thrown obstacles in the way of collection or has otherwise induced the creditor to delay collection proceedings or such claimant must establish conduct on the part of his opponent which is tantamount to fraud.

*Pietka*, 63 Ill.Dec. at 234, 437 N.E.2d at 883 (citations omitted); *see also General Dynamics v. Zion State Bank & Trust*, 86 Ill.2d 135, 56 Ill.Dec. 51, 54, 427 N.E.2d 131, 134 (1981) (prejudgment interest

---

4. *See* R.54 at 6; R.58. The Illinois prejudgment interest statute states in relevant part:

Creditors shall be allowed to receive at the rate of five (5) per centum per annum ... on

money withheld by an unreasonable and vexatious delay of payment.

Ill.Ann.Stat. ch. 17, para. 6402 (Smith–Hurd 1981 & Supp.1988).

award inappropriate where parties' dispute "was both genuine and substantial"). However, no "honest dispute" over Equitable's obligation to pay a broker's commission to Ross–Berger remained after the *Combined Network* litigation determined that a valid lease existed between Equitable and Combined. The meritless arguments that Equitable raised in its attempt to force relitigation of the lease issue that had already been decided against it in *Combined Network* can be characterized as "obstacles [thrown] in the way of collection" by Equitable. Once it had been determined that a valid lease existed between Combined and Equitable, Equitable *owed* Ross–Berger its commission pursuant to the "implied agreement" between Equitable and its real estate broker—Ross–Berger's predecessor in interest. *See* note 1 *supra*. Under such circumstances, an award of prejudgment interest is appropriate. *See General Dynamics*, 56 Ill.Dec. at 54, 427 N.E.2d at 134 (" 'interest would be a proper element of recovery only if it could be said [a] relationship of debtor and creditor existed between the parties' ") (quoting *Mariner v. Gilchrist*, 280 Ill. 544, 117 N.E. 695 (1917)).

In addition, the fact that Ross–Berger waited until February 1987 to seek recovery of a commission earned in February 1982 did not preclude the district court from concluding that Equitable's failure to pay the commission after the conclusion of the *Combined Network* litigation was unreasonable and vexatious. It would have made little sense for Ross–Berger to insist that Equitable pay a broker's commission during the pendency of litigation in which Equitable was contending that no enforceable lease had ever existed. Any demand for payment made during the pendency of the litigation would have been futile. In any event, the district court awarded prejudgment interest from the date of our *Combined Network* decision, November 12, 1986, not from early 1982 when the commission was earned. Ross–Berger filed suit to recover its commission on February 3, 1987—less than three months after *Combined Network* was decided and it became

clear that Equitable owed Ross–Berger its broker's commission.

Finally, Equitable's contention that it had a "valid reason" to delay payment while it determined whether Ross–Berger actually owned the broker's commission earned by Berger Realty Group must be rejected. Ross–Berger's amended complaint clearly alleged that it had become Berger Realty Group's successor in interest by purchasing Berger's real estate brokerage business. *See* R.29 at 1–2. Equitable maintains that it was under an obligation to investigate this allegation to protect itself from a subsequent claim by Berger. However, even after it conducted discovery and established that Ross–Berger had actually purchased the real estate commission claim from Berger, Equitable continued to resist Ross–Berger's attempt to recover the commission. Under these circumstances, it was within the district court's discretion to conclude that Equitable's "valid reason" for delay was merely another obstacle thrown in the path of Ross–Berger's recovery of the commission. In light of all of these considerations, we cannot conclude that the district court abused its discretion in awarding prejudgment interest to Ross–Berger.

### C. *Rule 38 Sanctions*

Rule 38 of the Federal Rules of Appellate Procedure permits a court of appeals to award "just damages" to the appellee if it determines that "an appeal is frivolous." An award of attorney's fees is an appropriate form of "damages" under Rule 38. *See In re Wildman*, 859 F.2d 553, 560 (7th Cir.1988); *In re Central Ice Cream Co.*, 836 F.2d 1068, 1075–76 (7th Cir.1987); Fed. R.App.P. 38 advisory committee's note ("damages" includes "attorney's fees and other expenses incurred by an appellee").

▌ We must make two determinations before imposing Rule 38 sanctions on Equitable. First, we must find that Equitable's appeal is in fact frivolous. Second, we must determine whether sanctions are appropriate in this case. *See Mays v. Chicago Sun–Times*, 865 F.2d 134, 138 (7th Cir.1989); *In re Wildman*, 859 F.2d at 560;

*Spiegel v. Continental Bank,* 790 F.2d 638, 650 (7th Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986).

 " 'An appeal is frivolous when the result is obvious or when the appellant's argument is wholly without merit.' " *Mays,* 865 F.2d at 138 (quoting *Indianapolis Colts v. Mayor and City Council of Baltimore,* 775 F.2d 177, 184 (7th Cir. 1985)). We conclude that Equitable's appeal is frivolous under this standard. On appeal, Equitable presents us with precisely the same arguments against the application of collateral estoppel in this case that the magistrate had rejected. The magistrate's reasons for rejecting these contentions were cogently explained in a Report and Recommendation that the district court adopted. Moreover, each of Equitable's contentions was in fact meritless. It argued for the application of an absolute rule in a context where district courts have been given broad discretion; it mischaracterized the role that equitable estoppel played in the prior litigation; and it raised the spectre of jury prejudice without presenting any evidence to support its assertion. In addition, the district court awarded prejudgment interest on the ground that Equitable's delay in payment of the broker's commission was "vexatious and unreasonable." R.58 at 1. Equitable "could not have had a reasonable expectation that the same arguments would prevail in this court." *Mays,* 865 F.2d at 139. Therefore, we conclude that Equitable's appeal was frivolous within the meaning of Rule 38.

It also appears, on the record before us, that sanctions are appropriate in this case. Equitable, "one of the largest financial institutions in the United States," *see* Appellant's Br. at 17–18, should have known better than to pursue its meritless arguments on appeal. Under these circumstances, awarding Ross–Berger its attorney's fees appears to serve the twin purposes of Rule 38: (1) the compensation of parties that were victorious in the district court for the expense and delay of defending against meritless arguments in the courts of appeals; and (2) the deterrence of meritless appeals and the preservation of

the appellate calendar for cases worthy of consideration. *See Mays,* 865 F.2d at 139; *Ruderer v. Fines,* 614 F.2d 1128, 1132 (7th Cir.1980) (per curiam). However, before making a final determination with respect to the appropriateness of sanctions in this case, we shall afford Equitable an opportunity to state why attorney's fees ought not be awarded Ross–Berger. Such a statement must be filed within fifteen days of this opinion.

### *Conclusion*

The judgment of the district court is affirmed. The court properly granted Ross–Berger's summary judgment motion and did not abuse its discretion in awarding Ross–Berger prejudgment interest. Equitable is ordered to file with this court, within fifteen days of the date of this opinion, a statement as to why attorney's fees reasonably incurred in defending this appeal ought not be awarded to Ross–Berger.

AFFIRMED.